EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FUNDADOR RODRÍGUEZ RIVERA, acusado y apelante.

*Número:* 16386    *Resuelto:* 21 de diciembre de 1961

*Carlos E. Colón* y *Santos P. Amadeo*, abogados del apelante; *J. B. Fernández Badillo*, Procurador General y *Héctor R. Orlandi Gómez*, Procurador General Auxiliar, abogados de El Pueblo.

Sala integrada por el Juez Asociado señor Belaval como Presidente de Sala y los Jueces Asociados señores Hernández Matos y Santana Becerra.

El Juez Asociado Señor Santana Becerra emitió la opinión del Tribunal.

Se formuló acusación enmendada de asesinato en primer grado contra Manuel Hernández Sierra y el apelante Fundador Rodríguez Rivera porque el 12 de marzo de 1955, en Utuado, ilegal, voluntaria y criminalmente, *"actuando conjuntamente y de común acuerdo"*, con malicia premeditada, deliberación y con el propósito firme y decidido de darle muerte ilegal a un ser humano, demostrando dichos acusados tener un corazón pervertido y maligno, *"al perpetrar un delito de Escalamiento en Primer Grado en la residencia de la señora Mary L. Fordham Vda. de Boerman"*, acometieron y agredieron con un reloj, instrumento contundente, a dicha señora produciéndole fracturas y heridas de carácter grave que le ocasionaron la muerte. El jurado halló culpable al apelante de asesinato en primer grado y fue sentenciado a reclusión perpetua.

En su apelación hace los siguientes señalamientos de error: (1) que la Sala sentenciadora erró al no instruir al jurado que Manuel Hernández Sierra era un cómplice del apelante y por lo tanto éste no podía ser condenado a menos que su declaración se corroborara; (2) erró la Sala al no definir al jurado lo que constituía el delito de escalamiento ya que se acusó de asesinato en la comisión de dicho delito; (3) al no instruirse al jurado sobre asesinato de segundo grado; y (4) que fue privado del derecho a un juicio imparcial debido a la declaración inesperada del coacusado Manuel Hernández Sierra.

En torno al primer señalamiento de error, la Sala instruyó así: "La otra declaración que hay es la de Manuel Hernández. Antes quiero darles otra instrucción. De acuerdo con nuestras leyes un coacusado no puede ser declarado culpable por un delito con la sola declaración de su cómplice. En un caso que surgiera declaración de un cómplice responsabilizando a una persona con quien llevó a cabo el hecho

delictivo, si no es corroborada por otra declaración, pues aquélla, la de su cómplice, repito, no es suficiente para declararlo culpable."

En *Pueblo* v. *Rivera*, 79 D.P.R. 832 (1957) se levantó como error el haberse instruido al jurado que éste tenía poder para determinar si un testigo en ese caso era o no cómplice de los acusados; y el no definirle al jurado lo que constituía un cómplice a los fines de determinar si la declaración de éste debía ser corroborada. Resolviendo esos planteamientos este Tribunal expresó: "el error cometido al instruir al jurado que éste tenía facultad para determinar si el testigo señor Guillermo Hernández Vega era o no un cómplice y el error cometido al no definirle al jurado lo que constituye un cómplice, son suficientes para revocar la sentencia y ordenar un nuevo juicio: *Pueblo* v. *Flecha*, 70 D.P.R. 685 (De Jesús), (1949) cita precisa a la página 689. De la prueba del caso se desprende claramente que Guillermo Hernández Vega era un cómplice. No hubo conflicto en cuanto a su condición como tal cómplice. En este caso compete al Juez resolver, que tal testimonio es uno de un cómplice, que debe ser corroborado, e instruir al jurado en cuanto a ese respecto, y no dejar, a juicio del jurado determinar, si el testimonio es uno o no es de un cómplice, y si el mismo debe o no debe ser corroborado. *Hubiera sido suficiente describir al testigo como un co-autor en el designio común de todos los acusados comprendidos en el ataque al Cuartel de la Policía de Arecibo:*" (Siguen citas.) (Énfasis suplido ahora.) Ordenamos un nuevo juicio. ■

En el caso de autos la situación es distinguible. No se trata como en el caso de *Rivera*, de la declaración de un testigo que no estaba siendo enjuiciado, sino de la declaración de uno de los coacusados, de una persona que ya en la acusación se decía que había actuado conjuntamente y de común acuerdo con el apelante. Desde que comenzó el juicio ambos acusados en el banquillo, y se leyó la acusación al jurado,

durante todo el proceso mientras se practicaba la prueba, y de la prueba desfilada tanto documental como testifical, se destacó el hecho que el coacusado que declaró era un coautor del delito. Ese hecho le era familiar al jurado. Si bien la Sala sentenciadora no dijo en tantas palabras que el coacusado era un coautor o cómplice partió de esa situación obvia del caso para todos, inclusive para el jurado, al instruir que un *"coacusado"* no podía ser declarado culpable con la sola declaración de *su* cómplice, y que tal declaración debía ser corroborada. Por otra parte, distinto al de *Rivera* en éste la Sala dio amplias instrucciones de ley sobre lo que constituye un cómplice o coautor,—Arts. 35 y 36 del Código Penal.—También se distingue este caso en el hecho importante de que la Sala sentenciadora no dejó para ser resuelto por el jurado si el coautor que declaró estando enjuiciado era o no un cómplice, como ocurrió con el testigo en el caso anterior. La situación aquí va más allá del grado de suficiencia que fijamos en la decisión de *Rivera*, supra, parte enfatizada. Independientemente del aspecto técnico que se presenta, el récord no deja la menor duda que la declaración del coacusado Hernández Sierra quedó corroborada aun más allá de la norma de derecho aquí vigente de la corroboración.

Dispondremos conjuntamente del segundo y del tercer señalamientos de error, que presentan cuestiones relacionadas entre sí. En este caso se imputó un asesinato en primer grado *estatutario*, el conocido en la jurisprudencia anglosajona como *"felony murder"*, la muerte perpetrada mientras se cometía un escalamiento.—Art. 201 del Código Penal, versión inglesa.— (¹)

---

(¹) "Todo asesinato perpetrado por medio de veneno, acecho, o tortura, y toda clase de muerte alevosa, deliberada y premeditada, o cometida al perpetrarse o intentarse algún incendio de morada, rapto, robo, asalto, o mutilación, constituye asesinato de primer grado; siendo de segundo grado todos los demás."

. . . . . "or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, *burglary* or mayhem, is murder of the first degree, and all other kinds of murders are of the second degree."

No ha mucho, en *Pueblo* v. *Palou* (1958), 80 D.P.R. 364, un caso en que ocurrieron muertes al perpetrarse un incendio de morada, tuvimos ocasión de referirnos a este tipo de asesinato. Véanse: *Pueblo* v. *Acosta*, 11 D.P.R. 249 y *Pueblo* v. *Alméstico*, 18 D.P.R. 320 y otros casos que citamos. Dijimos en *Palou*, pág. 382, "[E]stablecida la intervención de Palou en el fuego como cuestión de hecho, *debe habérsele probado*, en las circunstancias de este caso, *la comisión de un delito de incendio malicioso en todos sus elementos esenciales*, si han de sostenerse las acusaciones de asesinato en primer grado." (Citas.) (Énfasis puesto ahora.) Más adelante, pág. 384: "A pesar de ello, probado que el apelante perpetró un incendio malicioso, la muerte de las personas que ocupaban las plantas altas del edificio motivada, según se estipuló, por las extensísimas y profundas quemaduras a consecuencia del fuego, constituye asesinato *en primer grado por fuerza y mandato* del art. 201 del Código Penal." (Énfasis ahora.) Véase la reseña histórica y comentario del *"felony murder"* bajo el escolio 9, en dicha página.

Esta es una situación, como podrá observarse, en que un ingrediente esencial de un delito lo constituye a la vez la comisión o el intento de cometer, otro delito. En ese caso, la muerte es *a fortiori* asesinato de primer grado, aunque no hubiera prueba separada de deliberación y premeditación. *Pueblo* v. *Palou*, supra, pág. 372. ■

Lo que es un escalamiento, ingrediente esencial en este caso de primer grado de asesinato, constituye un concepto legal al cual se llega estableciéndose determinados hechos. Era necesario e imprescindible, por lo tanto, que la Sala instruyera al jurado sobre lo que constituye en ley este delito, de modo que el jurado, con la prueba ante sí, determinara si se cometía un delito de escalamiento al darse muerte, y traer el veredicto estatutario de asesinato en primer grado y de ningún otro grado o delito menor comprendido. La instrucción aludida se hacía aún más necesaria considerando

que el escalamiento es uno de esos delitos que requieren una *intención específica como cuestión de hecho*, y no le basta la intención general del artículo 12 del Código Penal.([2])

La Sala sentenciadora instruyó al jurado que no le daría instrucciones sobre asesinato en segundo grado porque no tenía base en la prueba para producir esa instrucción. La Sala estuvo en lo correcto, tratándose de un caso de primer grado por fuerza de ley. Hubiera sido más bien error el darlas. Cf: *Green* v. *United States* (CA DC) 218 F.2d 856. Ha habido, no obstante, casos semejantes en que se han dado instrucciones de segundo grado, y aun cuando la Sala no cometió error al negarlas, si las hubiera dado ello tal vez habría menguado el efecto perjudicial de no dar las referentes al escalamiento. En *Pueblo* v. *Rivera* (A) *Panchito* (1905), 9 D.P.R. 505, donde también se dieron instrucciones de asesinato en segundo grado y de homicidio, sosteniendo la convicción dijimos aunque por vía de *dictum*, pág. 520: "Por cuanto la acusación imputó, y los hechos, hasta donde han podido fijarse, demuestran que el asesinato de Severo Lorenzo fue cometido con ocasión de robo, este delito fue también explicado al jurado, por el Tribunal. Además, esta fue la circunstancia que se tuvo en cuenta para calificar el asesinato como asesinato en primer grado." Fue un error seriamente perjudicial no haberle definido al jurado el delito de escalamiento ni haberle dado instrucciones sobre el mismo. Cf: *State* v. *Butler* (N. J. 1958), 143 A.2d 530, 549–551; *People* v. *Coefield* (Cal.), 236 P.2d 570; *People* v. *Ballentine* (Cal.), 246 P.2d 35; *People* v. *Morlock* (Cal.), 292 P.2d 897. Este error requiere un nuevo juicio.

El Pueblo invoca por analogía el caso de *Pueblo* v. *Cirino*, 69 D.P.R. 525. Este caso fue una acusación de asesinato

---

([2])"Toda persona que entrare en una casa, aposento, habitación, casa de vecindad, taller, almacén, tienda, granero, establo, dependencia, u otro edificio, pabellón, embarcación, carro o vagón, *con el propósito* de cometer hurto o ratería, o cualquier delito grave (*felony*) será culpable de escalamiento."

en *segundo* grado, no en primero, en que la muerte sobrevino por un aborto ilegal. Dijimos que no era necesario dar instrucciones del delito de aborto criminal. La diferencia entre el caso de *Cirino* y el de autos es clara. El delito de aborto criminal no es un ingrediente esencial al asesinato en segundo grado, que es la muerte ilegal por un acto realizado con malicia premeditada. En ese caso el acto lo constituyó un aborto, pero pudo haber sido cualquier otro. En este caso, como hemos dicho, el delito de escalamiento era un ingrediente esencial al asesinato en primer grado estatutario y el jurado tenía que determinar con la correspondiente instrucción de derecho si la prueba que desfiló ante ellos demostraba la comisión de aquel delito.

*Habrá un nuevo juicio.*