EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANTONIO MÉNDEZ RAMOS c/p ÑÍN, acusado y apelante.

*Número:* CR-78-40      *Resuelto:* 27 de noviembre de 1978

*Sergio Peña Clós, Raúl Olmo Olmo* y *José Rafael Gelpí,* abogados del apelante; *Héctor A. Colón Cruz, Procurador General,* y *Rose Mary Corchado Lorent, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

El apelante fue acusado y convicto por tribunal de derecho de los delitos de asesinato en primer grado e infracción del Art. 8 de la Ley de Armas. Alega ante nos insuficiencia de la prueba para sostener el fallo de asesinato en primer grado. No tiene razón.

Como es usual en estos casos, la prueba de cargo y la de defensa sostienen versiones que confligen entre sí. La de cargo estableció que el 25 de octubre de 1976 el apelante se personó a un negocio en que había un billar, y allí dijo que iba "a matar a Chilo y a Cholo Alvarez" porque por culpa de ellos le habían quitado una pensión del Seguro Social a su señora madre. A instancias del dueño del negocio, un parroquiano se lo llevó de allí en un *jeep*, y lo dejó en determinado lugar que le indicó el apelante, al tiempo que le dijo que "a éste lo espero yo aquí," refiriéndose a Cecilio Martínez, apodado Chilo. Quince o veinte minutos después el apelante regresó al negocio del billar. Estaba armado de una escopeta de caza, para la cual tenía licencia. Se notaba que había ingerido algún licor. Allí pidió y se tomó una caneca de ron mientras jugaba billar y manifestó en presencia de varias personas que había matado a Chilo Martínez porque se lo había prometido a su madre. Cecilio Martínez apareció muerto esa misma tarde de un disparo de escopeta que le interesó la región cardio-pulmonar, héchole a una distancia de tres yardas y media.

La prueba del apelante pretendió demostrar que él estaba en estado de embriaguez cuando ocurrió el incidente que privó de la vida a Cecilio Martínez. Consistió de las declaraciones de un agente de la Policía a quien el apelante entregó la escopeta, a eso de las 9:00 de la noche, quien declaró que a esa hora "se notaba que había ingerido licor"; y el fiscal investigador de los hechos, quien declaró que también a las 9:00 de la noche vio al apelante y se encontraba en aparente estado de embriaguez. El apelante declaró que salió temprano de su casa el día de los hechos para cazar palomas. Visitó varios negocios en que ingirió canecas de ron. Quería una satisfacción de Cecilio Martínez porque éste había causado que a su madre le quitaran una pensión en 1935. Ella "murió de sufrimientos" en septiembre de 1976, a la edad de 84 años. Al encontrarse con Cecilio y pedirle una explicación éste le dijo que

se olvidara de eso, que había ocurrido hacía 42 años. Cecilio trató entonces de quitarle la escopeta y ésta se disparó.

El apelante invoca el Art. 33 del Código Penal vigente, 33 L.P.R.A. sec. 3155, que dice:

"Sec. 3155. Embriaguez o intoxicación voluntaria

La voluntaria embriaguez o la voluntaria intoxicación por drogas, sustancias narcóticas, estimulantes o deprimentes, o sustancias similares no exime de responsabilidad criminal. Pero siempre que la existencia real de algún fin, motivo o intención determinados fuere elemento indispensable para constituir alguna clase o grado de delito especial el juzgador podrá tomar en consideración el hecho de que el acusado se hallaba entonces ebrio o intoxicado, al determinar el fin, motivo o intención con que cometió el delito."

Debemos señalar, en primer lugar, que el tribunal a quo no creyó la versión del apelante y que éste estuviera en estado de embriaguez al causar la muerte de Cecilio Martínez. El propio apelante restó fuerza a su versión al indicar que puede tomar cuatro o cinco litros de ron al día sin que le causen efecto. Su testimonio más bien corroboró el móvil establecido por la prueba de cargo. Es de notar, además, que el hecho de estar en estado de embriaguez a las 9:00 de la noche no significa que lo estuviera alrededor de 7 horas antes, cuando causó la muerte a Martínez.

La mera prueba de embriaguez no es suficiente ni para exonerar, ni para rebajar la calificación del delito. Al interpretar el Art. 41 del Código Penal de 1937, de donde procede el 33 del actual Código, señalamos en *Pueblo* v. *Rivera,* 70 D.P.R. 570, 573–574 (1949), "que la embriaguez—voluntaria—tiene que ser de tal grado o carácter que inhiba en el acusado su facultad mental para formar la intención específica requerida por el Código para la convicción de un delito—o grado del mismo—en el cual se requiera tal intención específica, y que la determinación de ese hecho es esencialmente una para el jurado o la corte juzgadora." Esta doctrina ha sido reiterada

en *Pueblo* v. *Febres,* 78 D.P.R. 893 (1956); *Pueblo* v. *Díaz Díaz,* 91 D.P.R. 759 (1965); *Pueblo* v. *Soriano Rodríguez,* 92 D.P.R. 46 (1965); *Pueblo* v. *Sánchez Vega,* 97 D.P.R. 133 (1969); y *Pueblo* v. *Delgado Lafuente,* 97 D.P.R. 266 (1969). No hay razón para variarla. La redacción del vigente Art. 33 difiere del anterior Art. 41 del Código derogado únicamente en que lo amplió para aplicar sus disposiciones a los casos de intoxicación por drogas, aparte de hacer algunos cambios de estilo en la redacción.(*) Los hechos ante nuestra consideración evidencian que el apelante dio muerte a su víctima intencionalmente, mediante malicia y en forma deliberada y premeditada. Son suficientes para justificar su convicción por asesinato en primer grado. Arts. 82 y 83 del Código Penal, 33 L.P.R.A. secs. 4001 y 4002, respectivamente. Dice dicho Código en su Art. 7, inciso (19), 33 L.P.R.A. sec. 3022(19), que las palabras "malicia" o "maliciosamente", "[d]enotan la comisión de un acto dañoso, intencionalmente, sin justa causa o excusa y la consciente naturaleza del mismo." La prueba creída por el tribunal a quo estableció cumplidamente que el apelante actuó intencionalmente y con pleno conocimiento de lo que hacía. No estamos justificados en creer lo que el juez sentenciador no creyó, y concluir que el apelante estuviera en tal estado de embriaguez que se justifique rebajar la calificación del delito de que fue convicto. Véase *Pueblo* v. *Belmonte Colón,* 106 D.P.R. 82 (1977).

Aunque en su escrito de apelación el apelante indicó que apelaba de las sentencias recaídas tanto en la causa por in-

---

(*) El Art. 41 del Código de 1937 disponía:

"Ningún acto cometido por una persona en estado de voluntaria embriaguez es menos criminal por haberse cometido en tal estado. Pero siempre que la existencia real de algún fin, motivo o intento determinado fuere elemento indispensable para constituir alguna clase o grado de delito especial, el jurado podrá tomar en consideración el hecho de que el acusado se hallaba entonces ebrio, al determinar el fin, motivo o intento con que cometió el acto."

fracción del Art. 8 de la Ley de Armas como en la causa por asesinato en primer grado, se limitó en su alegato ante nos a la convicción por asesinato. Procede por tanto desestimar la apelación por la infracción a la Ley de Armas, y confirmar la sentencia por el delito de asesinato en primer grado.