EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* HÉCTOR A. CABALLERO RODRÍGUEZ, acusado y apelante.

*Número:* CR-78-50        *Resuelto:* 17 de octubre de 1979

*Heyda Vigil McClin,* de la Sociedad para Asistencia Legal, abogada del apelante; *Héctor A. Colón Cruz, Procurador General,* y *Ricardo Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo.

El Juez Asociado Señor Rigau emitió la opinión del Tribunal.

El apelante, quien conducía un vehículo de motor, dio muerte de tres tiros al policía Héctor M. Maldonado Berley, al éste detenerlo por no haber aquél obedecido una señal de "Pare" existente en la carretera de Naguabo a la entrada de la carretera de Juncos.

El policía vestía uniforme y su única actuación consistió en tocar la sirena de su carro, bajarse del mismo, acercarse al carro del apelante y darle los buenos días. Acto seguido el apelante le hizo los tres disparos al policía e inmediatamente huyó en el carro que conducía.

El matador iba acompañado de tres personas llamadas Héctor Benítez, Juan Ramón Ortiz y Amarylis Flores. Los últimos dos prestaron testimonio como testigos de cargo.

Miguel Angel Pérez González, quien viajaba en otro vehículo, presenció los hechos, identificó al apelante, llevó el policía al hospital y también prestó testimonio de cargo.

Un jurado encontró al apelante culpable de asesinato en primer grado y de portación ilegal de armas. El tribunal lo encontró culpable de posesión ilegal de armas. Fue sentenciado a cumplir sentencias consecutivas de reclusión perpetua, de tres a cinco años de presidio y de 6 meses de cárcel, respectivamente.

La única cuestión que el apelante plantea en apelación es que el veredicto del jurado sobre el asesinato debió ser de segundo grado y no de primer grado. Alega que la prueba aportada por los testigos demostró que él estaba bajo los efectos de marihuana al matar al policía.

A la fecha del delito, el 16 de junio de 1974, estaba en vigor el anterior Código Penal, el cual en su Art. 41, 33 L.P.R.A. sec. 87, disponía como sigue:

"Ningún acto cometido por una persona en estado de voluntaria embriaguez es menos criminal por haberse cometido en tal estado. Pero siempre que la existencia real de algún fin, motivo o intento determinado fuere elemento indispensable para constituir alguna clase o grado de delito especial, el jurado *podrá* tomar en consideración el hecho de que el acusado se hallaba entonces ebrio, al determinar el fin, motivo o intento con que cometió el acto." (Énfasis nuestro.)

■ Se observará que el citado artículo no menciona el efecto de drogas prohibidas como factor que podrá tomarse en consideración por el juzgador de los hechos en la determinación de si estuvo presente en el ánimo del acusado determinado fin, motivo o intento que fuere indispensable para la comisión del delito imputado. Aunque los hechos y el juicio tuvieron lugar durante la vigencia del anterior Código Penal, la sentencia se dictó el 4 de febrero de 1975, estando ya en vigor el presente Código Penal, pues éste comenzó a regir en 22 de enero de 1975. Código Penal de 1974, Art. 284, 33. L.P.R.A. sec. 4628.

El apartado segundo del Art. 4 del vigente Código Penal dispone que "Si la ley vigente al tiempo de cometerse el delito fuere distinta de la que exista al imponerse la sentencia, se aplicará siempre la más benigna." 33 L.P.R.A. sec. 3004.

Es preciso entonces, examinar el texto de la disposición del vigente Código Penal que equivale al citado Art. 41 del Código anterior. Dicha disposición está contenida en el Art. 33 del Código Penal de 1974, 33 L.P.R.A. sec. 3155, que lee como sigue:

"La voluntaria embriaguez o la voluntaria intoxicación por drogas, sustancias narcóticas, estimulantes o deprimentes, o sustancias similares no exime de responsabilidad criminal. Pero siempre que la existencia real de algún fin, motivo o intención determinados fuere elemento indispensable para constituir alguna clase o grado de delito especial el juzgador podrá tomar en consideración el hecho de que el acusado se hallaba entonces ebrio o intoxicado, al determinar el fin, motivo o intención con que cometió el delito."

El nuevo artículo dispone que la voluntaria embriaguez o la voluntaria intoxicación por drogas, sustancias narcóticas, estimulantes o deprimentes, o sustancias similares no exime de responsabilidad criminal pero, al igual que disponía el Art. 41 del Código anterior, preceptúa que el juzgador *podrá* tomar en consideración el hecho de que el acusado se hallaba ebrio o intoxicado al cometer el delito, a los fines de determinar fin, motivo o intención.

Por entender que la disposición vigente—el Art. 33 del Código actual—es más benigna que el Art. 41 del Código anterior y en obediencia al citado Art. 4 del Código vigente, a ella nos atendremos.

La aplicación del citado Art. 33 no presenta problema en este caso. El tribunal dio instrucciones al jurado respecto a cuándo procede la reducción del grado del delito de asesinato en primer grado a asesinato en segundo grado cuando el juzgador entiende que la capacidad del apelante para premeditar y deliberar se había disminuido como consecuencia de haber ingerido drogas o de haber fumado marihuana.

Luego, el jurado fue instruido al efecto, estuvo consciente de la situación y al rendir un veredicto de asesinato en primer grado no creyó que el grado de intoxicación, si lo hubo, era tal que justificaba la reducción del grado del delito.

■ Aparte de que no debemos intervenir con esa apreciación del juzgador, a quien correspondía hacerla, *Pueblo* v. *Méndez Ramos*, 108 D.P.R. 59 (1978), la prueba sobre el uso de marihuana en el caso de autos no justifica la reducción del delito de primero a segundo grado y por el contrario es jurídicamente suficiente para sostener el veredicto.

Sobre el uso de la marihuana la prueba sólo estableció que poco antes de cometer el asesinato, el apelante había compartido un cigarrillo de marihuana con sus compañeros de viaje. No hay prueba de que eso produjese intoxicación alguna a los que compartieron dicho cigarrillo con el apelante y la alegación del apelante en ese sentido no está justificada por la prueba. La misma fue exigua en cuanto a alguna posible intoxicación y por el contrario la deliberación necesaria para establecer el asesinato en primer grado se puede deducir de los hechos y de un comentario hecho por el propio apelante, quien después de herir mortalmente al policía dijo: "[E]l guardia se creía que me iba a dar el Tichet [*sic*] número tal, pero el que le había dado el Tichet [*sic*] había sido él como regalo de padres." Además, hizo manifestaciones indicativas de que a quien debió pegarle los tiros fue al conductor de otro vehículo que obstaculizó su fuga.

En dos casos recientes hemos tenido que ver con situaciones parecidas y al aquí confirmar la sentencia apelada no establecemos conflicto alguno con dichos dos casos. En el primero, *Pueblo* v. *Belmonte Colón*, 106 D.P.R. 82 (1977), rehusamos rebajar a homicidio un veredicto de asesinato en segundo grado, el cual confirmamos. Allí la tesis de la defensa fue al efecto de que el apelante ingirió bebidas alcohólicas mientras tomaba una droga para adelgazar y que dichas drogas menoscabaron en tal grado sus facultades que no podía formar la intención de matar con malicia premeditada,

elemento indispensable en el delito de asesinato en segundo grado, y que por tal razón debía ser declarado culpable de homicidio voluntario. Rechazamos el planteamiento. Confirmamos la apreciación que de esas circunstancias hizo el juzgador y añadimos que la evidencia para establecer el estado mental que justifique la reducción del delito debía ser aportada por peritos médicos y sicólogos. En el caso de autos no se plantea esta cuestión y, como hemos visto, hemos encontrado que la prueba justifica la apreciación que hizo el jurado luego de haber sido instruido al efecto.

En un caso posterior, *Pueblo* v. *Méndez Ramos*, supra, confirmamos una sentencia de asesinato en primer grado. Allí el apelante planteó que había tomado licor en apreciable cantidad. En dicho caso expresamos que "La mera prueba de embriaguez no es suficiente ni para exonerar ni para rebajar la calificación del delito." Añadimos que la embriaguez voluntaria (a los efectos de rebajar la calificación del delito) tiene que ser de tal grado que inhiba en el acusado su facultad mental para formar la intención específica requerida por la ley para la comisión de un delito en el cual se requiera tal intención específica. La determinación de ese hecho, dijimos, es para ser hecha por el jurado o por el tribunal juzgador. Concluimos en dicho caso de *Méndez Ramos* que "La prueba creída por el tribunal a quo estableció cumplidamente que el apelante actuó intencionalmente y con pleno conocimiento de lo que hacía. No estamos justificados en creer lo que el Juez sentenciador no creyó, y concluir que el apelante estuviera en tal estado de embriaguez que se justifique rebajar la calificación del delito de que fue convicto."

*Se confirmará la sentencia apelada.*

El Juez Asociado Señor Negrón García no intervino.