EL PUEBLO DE PUERTO RICO, peticionario, *v.* VÍCTOR ROBLES GONZÁLEZ, acusado y recurrido.

*Número:* CE-91-209 *Resuelto:* 29 enero de 1993

*Jorge E. Pérez Díaz, Procurador General, y Anabelle Rodríguez, Subprocuradora General Auxiliar,* abogados del peticionario; *Rafael Rodríguez Rivera,* de la *Sociedad para Asistencia Legal, Nelson Pérez Domínguez, Juan Santiago Nieves* y *José Juan Nazario de la Rosa,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Los hechos que dan lugar al presente recurso son el resultado de una problemática social que nos afecta cada vez con más auge: la comisión de delitos por parte de adictos con el propósito de poder satisfacer el vicio de las drogas. Los asesinatos cometidos durante la perpetración del delito de robo son cada vez más comunes; la mayoría de éstos consecuencia del uso de estupefacientes.

Nos corresponde en este caso establecer la norma a regir en nuestra jurisdicción sobre la pertinencia, y admisibilidad, de prueba relativa a la intoxicación voluntaria de los imputados de delito, consecuencia del uso de drogas o alcohol, en los casos de asesinato en primer grado cometidos en la modalidad del "asesinato estatutario" *(felony murder).*

I

El Ministerio Público radicó ante el Tribunal Superior de Puerto Rico, Sala de Caguas, pliegos acusatorios por los delitos de asesinato en primer grado, robo, infracción a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418, y violación al Art. 168 del Código Penal, 33 L.P.R.A. sec. 4274, contra el recurrido José Robles González y otros dos individuos.[1] Las acusaciones surgen como consecuencia de la muerte de un ser humano acaecida du-

---

[1] Estos dos coacusados —como resultado de un procedimiento de alegación preacordada *(plea bargaining)*— hicieron alegación de culpabilidad por el delito de asesinato en segundo grado.

rante la perpetración de un robo, a mano armada, en que alegadamente participó el peticionario Robles González.

El 2 de abril de 1991 comenzó, por segunda vez,(²) el juicio contra José Robles González. El acusado peticionario renunció a su derecho a juicio por jurado y solicitó ser juzgado por tribunal de derecho. Al comenzar el proceso, *las partes estipularon la prueba de cargo*, consistente la misma en varias declaraciones juradas, fotografías y documentos. Sometido el caso por el Ministerio Fiscal a base de dicha evidencia, el acusado Robles González anunció como su primer testigo a la psiquiatra forense, doctora Cynthia Casanova.

Mediante el testimonio de la Dra. Casanova, la defensa trató de establecer que el acusado había consumido drogas el día de los hechos. Ante la objeción del Ministerio Fiscal, el tribunal preliminarmente dictaminó que dicha aseveración no se consideraría para establecer la veracidad de su contenido, sino solamente como un dato utilizado por el perito para emitir su opinión. La opinión pericial de la doctora Casanova —a los efectos de que el hecho de que Robles González había ingerido estupefacientes ese día le impedía a éste configurar una intención específica al efectuar el robo— se basó en dos entrevistas con el acusado, una con la señora madre de éste, el examen de una serie de documentos relacionados con el proceso judicial, y unos informes sobre el tratamiento del acusado en Hogares Crea. Luego de terminado el testimonio de la doctora Casanova, la defensa sometió su caso. El Ministerio Fiscal nuevamente objetó el mismo, aduciendo falta de pertinencia y que dicho testimonio constituía prueba de referencia; además, atacó

---

(²) En *Pueblo v. Robles González*, 125 D.P.R. 750 (1990), disolvimos al Jurado en el primer juicio celebrado por los mismos hechos. Luego se presentaron varios recursos ante este Foro cuestionando la constitucionalidad de la Ley Núm. 34 de 19 de junio de 1987, de la Ley Núm. 14 de 29 de junio de 1989 y alegando doble exposición (CE-90-688 y CE-90-689).

el testimonio pericial por carecer de base suficiente. El tribunal rechazó la objeción del Fiscal, dictaminando que el testimonio era pertinente y prestado conforme a derecho.[3]

A solicitud del Ministerio Público, el tribunal de instancia concedió tiempo al Estado para recurrir ante este Tribunal, vía *certiorari*. En el recurso que a esos efectos radicara, alega el Estado que el foro de instancia erró:

> "1. ... al permitir prueba impertinente sobre intoxicación del acusado al momento de los hechos imputados.
> 2. ... al admitir prueba sobre el efecto de la intoxicación del acusado al momento de los hechos, sin que hubiera prueba admisible alguna sobre el uso y consumo de drogas ....
> 3. ... al negar al perito de refutación del ministerio público acceso a las notas de la perito de defensa sobre sus entrevista[s] con el acusado y con su madre. Petición de *certiorari*, pág. 4.

Mediante el trámite de mostrar causa, acordamos revisar; ordenamos, adicionalmente, la paralización de los procedimientos a nivel de instancia. Encontrándonos en posición de resolver el recurso radicado, procedemos a así hacerlo.

## II

El Estado, mediante su primer señalamiento de error, cuestiona la *pertinencia* de la prueba, admitida por el foro de instancia, sobre intoxicación voluntaria del recurrido al momento de la comisión de los hechos *bajo un pliego acu-*

---

[3] Debe señalarse que, en ese momento, el Ministerio Fiscal le informó al foro de instancia que estaba en posición de presentar prueba pericial de refutación. A tales efectos solicitó que se le proveyeran todos los documentos que sirvieron de base a la opinión del perito de defensa. Tras un reparo inicial, la defensa accedió a entregar copia de los documentos pero solicitó una orden protectora del tribunal, a los efectos de que no se pudieran reproducir los mismos y que éstos le fueran devueltos. El tribunal ordenó la entrega de todos los documentos, con excepción de las notas tomadas por la perito durante las entrevistas con el acusado y su madre. Estas notas permanecerían en un sobre lacrado bajo la custodia del tribunal.

*satorio que imputa el delito de asesinato estatutario ("felo-
ny murder") en el cual el "delito base" lo es el de robo.*(⁴)

De entrada debe señalarse que nuestro ordena-
miento jurídico garantiza que nadie podrá ser castigado
penalmente por una acción u omisión que la ley establece
como delito "si la misma no se realiza con intención o ne-
gligencia criminal"; pudiendo demostrarse dicha intención
o negligencia "por las circunstancias relacionadas con el
delito, la capacidad mental y las manifestaciones y con-
ducta de la persona". Art. 14 del Código Penal, 33 L.P.R.A.
sec. 3061. *Pueblo v. Ruiz Ramos*, 125 D.P.R. 365 (1990). El
referido Código Penal, en su Art. 15, establece que un de-
lito es intencional: (a) cuando el resultado ha sido previsto
y querido, o (b) cuando el resultado sin ser querido ha sido
previsto o pudo ser previsto como consecuencia natural o
probable de su conducta.(⁵) *Pueblo v. Ruiz Ramos*, ante;
W.R. LaFave y A.W. Scott, *Handbook on Criminal Law*,
Minnesota, Ed. West Publishing Co., 1982, pág. 196.

La primera categoría establecida por este artí-
culo se conoce como "intención específica" y la segunda se
denomina como "intención general". *Pueblo v. Castañón
Pérez*, 114 D.P.R. 532 (1983); D. Nevares-Muñiz, *Código
Penal de Puerto Rico: revisado y comentado*, San Juan, Ed.
Rev. C. Abo. P.R., 1986, pág. 28; E. Cuello Calón, *Derecho
Penal*, 17ma ed., Barcelona, Ed. Bosch, 1975, T. I, Vol. 1,
pág. 432. En palabras de la profesora Nevares-Muñiz, *op.
cit.*, págs. 28 y 29, en el caso de la intención específica, se
"trata de aquella situación en que la persona tiene un *de-
seo expreso de efectuar el acto y quiere la producción del
resultado, el cual ratifica con su actuación*", mientras que

---

(⁴) La representación legal del recurrido alega que la acusación bajo la cual se
juzga a éste es una que imputa el delito de asesinato en segundo grado. Dicho plan-
teamiento es uno carente de méritos.

(⁵) 33 L.P.R.A. sec. 3062.

el concepto de intención general "debe ser explicado siguiendo la doctrina desarrollada en el derecho angloamericano, de donde tiene su origen ... que establece que toda persona es responsable de las consecuencias naturales y probables de sus actos", no requiriéndose en esta categoría "prueba específica respecto a la intención, como en los casos de intención específica, *sino que el comportamiento sea tal que demuestra una intención general de cometer el acto tipificado como delito"*. (Énfasis suplido.) Véanse, en adición: *Pueblo v. Colón Soto*, 109 D.P.R. 545 (1980); *Pueblo v. Betancourt Asencio*, 110 D.P.R. 510 (1980). Ahora bien, procede que se enfatice el hecho de que el grado, o elemento, de intención requerido en cada delito en particular —ya sea general o específica— *dependerá de la definición o tipificación que el legislador le haya dado al mismo al incorporarlo a nuestro ordenamiento jurídico.*

Por otro lado, resulta de particular pertinencia e importancia al planteamiento hoy ante nuestra consideración las disposiciones del Art. 33 del Código Penal, 33 L.P.R.A. sec. 3155, a los efectos de que:

La voluntaria embriaguez o la voluntaria intoxicación por drogas, sustancias narcóticas, estimulantes o deprimentes, o sustancias similares no exime de responsabilidad criminal. *Pero siempre que la existencia real de algún fin, motivo o intención determinados fuere elemento indispensable para constituir alguna clase o grado de delito especial el juzgador podrá tomar en consideración el hecho de que el acusado se hallaba entonces ebrio o intoxicado, al determinar el fin, motivo o intención con que cometió el delito.* (Énfasis suplido.)

Esta disposición habla por sí sola; conforme a los términos expresos de la misma, evidencia sobre la embriaguez o intoxicación voluntaria del imputado de delito al momento de la comisión de los hechos *únicamente será pertinente, y admisible, en casos en los cuales el legislador ha requerido, como elemento indispensable del mismo, que el Estado presente prueba sobre la "intención específica" de*

*cometer dicho delito por parte del acusado.*(⁶) Debe mantenerse presente, sin embargo, que la referida embriaguez, o intoxicación, voluntaria "tiene que ser de tal grado o carácter que inhiba en el acusado su facultad mental para formar la intención específica requerida por el Código para la convicción de un delito —o grado del mismo— en el cual se requiera tal intención específica, y que la determinación de ese hecho es esencialmente una para el jurado o la corte juzgadora". *Pueblo v. Rivera*, 70 D.P.R. 570, 573–574 (1949). Véase *Pueblo v. Méndez Ramos*, 108 D.P.R. 59, 62 (1978).

Aclarados estos extremos, acometemos la solución de la controversia específica ante nuestra consideración.

### III

■■■ Conforme el vigente Código Penal, comete el delito de asesinato aquel que le da muerte a un ser humano con malicia premeditada.(⁷) Existen dos grados de asesinato. Acorde con las disposiciones del Art. 83 del citado Código,(⁸)

Constituye asesinato en primer grado:
(a) Todo asesinato perpetrado por medio de veneno, acecho o tortura, toda clase de muerte alevosa, deliberada y premeditada, *o cometida al perpetrarse o intentarse algún incendio agravado, violación, sodomía, robo, escalamiento, secuestro, estragos, mutilación o fuga.*
(b) La muerte de un miembro de la Policía o de un Oficial de Custodia que se encuentre en el cumplimiento de su deber oca-

---

(⁶) A iguales efectos, en la jurisdicción federal se ha sostenido que la embriaguez o intoxicación voluntaria sólo es defensa para los delitos que requieren una "intención específica" al perpetrarse. *U.S. v. Sneezer*, 900 F.2d 177 (9no Cir. 1990); *United States v. Lavallie*, 666 F.2d 1217 (8vo Cir. 1981); *United States ex rel. Goddard v. Vaughn*, 614 F.2d 929 (3er Cir. 1980); *United States v. Nix*, 501 F.2d 516 (7mo Cir. 1974); *Caples v. United States*, 391 F.2d 1018 (5to Cir. 1968).

(⁷) Art. 82 del Código Penal, 33 L.P.R.A. sec. 4001.

(⁸) 33 L.P.R.A. sec. 4002 (Sup. 1987).

sionada dicha muerte como resultado de la comisión o tentativa de comisión de un delito grave o encubrimiento del mismo. *Todos los demás asesinatos serán considerados de segundo grado.* (Énfasis suplido.)

El elemento mental general requerido en el delito genérico de asesinato lo es el de "malicia premeditada". Este Tribunal ha definido la misma como

> ... la ausencia de justa causa o excusa al ocasionar la muerte e implica además la existencia de la intención de ocasionar la muerte de un semejante. *Esa intención se puede manifestar a través de uno de los dos siguientes elementos, cualquiera de los cuales es suficiente para determinar la existencia de malicia premeditada, a saber,* (a) la intención específica de matar, considerada como equivalente al deseo y propósito directo, explícito y definido de matar, o sea, precisamente formulado con el objetivo directo de matar, o, (b) *la intención de realizar un acto o de producir un grave daño corporal cuya consecuencia probable sea la muerte de una persona.* Este criterio se refiere a la peligrosidad envuelta en la actuación de un acusado, en el sentido de creación de un riesgo sustancial de muerte.[9] (Escolio y citas omitidas y énfasis suplido.)

El delito de asesinato en primer grado, en su modalidad de muerte alevosa, premeditada y deliberada, requiere una intención específica de ocasionar la muerte; en su modalidad de muerte por veneno, acecho y tortura, este Tribunal ha reconocido que en el empleo de tales medios está *implícita* la malicia premeditada y, en la mayoría de los casos, la deliberación. *Pueblo v. Belardo*, 50 D.P.R. 512 (1936); *El Pueblo v. Figueroa*, 26 D.P.R. 754 (1918).

En lo que respecta al asesinato estatutario, hemos reconocido que el mismo "incluye no solo una determinación legislativa [previa] de *mens rea* sino que, también, un criterio sobre causalidad". (Énfasis en el original.) *Pueblo v. Calderón Laureano*, 113 D.P.R. 574, 579 (1982). En otras

---

[9] *Pueblo v. Méndez*, 74 D.P.R. 913, 921–922 (1953). Véanse: *Pueblo v. Martínez Padró*, 91 D.P.R. 536, 538 (1964); *Pueblo v. Reyes Lara*, 100 D.P.R. 676, 682 (1972).

palabras, y como expresáramos en *Pueblo v. Palóu*, 80 D.P.R. 364, 372 (1958), esta "es una situación ... en que un ingrediente esencial de un delito lo constituye a la vez la comisión o el intento de cometer, otro delito. En ese caso la muerte es *a fortiori* asesinato de primer grado, aunque no hubiera prueba separada de deliberación y premeditación". (Énfasis en el original.) *Pueblo v. Rodríguez Rivera*, 84 D.P.R. 299, 303 (1961).

En resumen, bajo la modalidad del asesinato estatutario el Estado *no* tiene que presentar prueba sobre premeditación, deliberación e intención específica de matar. *El Pueblo v. Acosta*, 11 D.P.R. 249 (1906); *El Pueblo v. Rosado*, 17 D.P.R. 441, 449 (1911); *El Pueblo v. Alméstico*, 18 D.P.R. 320, 333 (1912); *El Pueblo v. Izquierdo*, 25 D.P.R. 382 (1917); *El Pueblo v. Matos y Matos*, 26 D.P.R. 586 (1918); *Pueblo v. Olivencia*, 54 D.P.R. 908 (1939); *Pueblo v. Palóu*, ante; *Pueblo v. Rodríguez Rivera*, ante, pág. 300; *Pueblo v. Lucret Quiñones*, 111 D.P.R. 716 (1981); D. Nevares-Muñiz, *Asesinatos y Homicidios*, 23 Rev. Jur. U.I.A. 1, 12 y 26 (1988). La intención del acusado es la de cometer el "delito base", pero se le responsabiliza a título de asesinato si ocurre una muerte al inferirse, por mandato legislativo, que el autor "razonablemente ha previsto o puede prever que la consecuencia natural o probable de su acción puede desembocar en la muerte de alguna persona". *Pueblo v. Lucret Quiñones*, ante, pág. 740. Nevares-Muñiz, *Asesinatos y Homicidios*, ante, pág. 29. Bajo esta modalidad, en consecuencia, bastará con que el Ministerio Público presente prueba de los elementos integrantes del "delito base" estatuido y demuestre que la muerte ocurrida fue producto de la perpetración de ese delito, o de su tentativa, para que quede configurado el delito de asesinato en primer grado en su modalidad de asesinato estatutario. *El Pueblo v. Rivera (a) Panchito*, 9 D.P.R. 505, 525 (1905). Dicho de otra forma, *el elemento mental nece-*

*sario para la comisión del delito de asesinato estatutario es aquel que es requerido para que se entienda cometido el "delito base".*

 Procede que se señale, y se enfatice, el hecho de que algunos de los delitos que sirven "de base" al asesinato estatutario requieren "intención específica" y, otros, meramente "intención general". Sobre la primera clasificación señalamos, a manera de ejemplo, los delitos de escalamiento e incendio agravado. *Pueblo v. Soriano Rodríguez*, 92 D.P.R. 46 (1965); *Pueblo v. Pacheco Betancourt*, 92 D.P.R. 698 (1965); *Pueblo v. Sánchez Vega*, 97 D.P.R. 133 (1969); *Pueblo v. Rodríguez Rivera*, ante. En relación con el "delito base" aquí en controversia (el robo) el Art. 173 del Código Penal, 33 L.P.R.A. sec. 4279, establece, en lo pertinente, que será culpable del mismo toda "persona que se apropiare ilegalmente de bienes muebles pertenecientes a otra, ya sustrayéndolos de su persona, o de la persona en cuya posesión se encuentre, ya en su inmediata presencia y contra su voluntad, por medio de la violencia o de la intimidación ...". Hemos resuelto que la Asamblea Legislativa actuó correctamente al incluir el mismo como uno de los "delitos bases" del asesinato estatutario. A esos efectos, expresamos en *Pueblo v. Lucret Quiñones*, ante, pág. 739, que "[s]iendo ... el delito de robo uno de tipo grave y extremadamente peligroso para la vida humana, la Legislatura válidamente puede incluirlo bajo la doctrina del asesinato estatutario".

 Por último, resulta de *particular importancia* a la controversia hoy ante nuestra consideración el hecho de que *reiteradamente* hemos resuelto que el delito de robo *no* es uno de intención específica. Véanse: *Pueblo v. Betancourt*, 66 D.P.R. 132, 133 (1946); *Pueblo v. Asencio Trinidad*, 95 D.P.R. 473, 477 (1967); *Pueblo v. Delgado Lafuente*, 97 D.P.R. 266, 269 (1969).

## IV

En vista de que en nuestra jurisdicción: la intención requerida en el delito de asesinato estatutario es aquella necesaria para cometer el delito base; que el delito que aquí nos ocupa —robo— es uno de intención general, y no de intención específica; y que la prueba sobre intoxicación voluntaria únicamente es pertinente en casos de delitos que requieren prueba sobre intención específica, *resulta mandatoria la conclusión a los efectos de que la prueba pericial sobre intoxicación por drogas* —presentada por la defensa en el presente caso con el propósito de demostrar que el aquí recurrido no pudo formar la intención específica para cometer el "delito base"— *es impertinente y, por ende, inadmisible.* Erró, en consecuencia, el tribunal de instancia al admitir en evidencia prueba a esos efectos.

En vista de lo expresado, *procede expedir el auto de "certiorari" y dictar sentencia revocatoria de la resolución emitida por el Tribunal Superior de Puerto Rico, Sala de Caguas, referente a la admisibilidad de la prueba de intoxicación voluntaria del recurrido, devolviéndose el caso a dicho foro para la continuación de procedimientos ulteriores compatibles con lo aquí expuesto.*

El Juez Presidente Señor Andréu García se inhibió.