ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **EL PUEBLO DE PUERTO RICO**<br>APELANTE(S)<br><br>V.<br><br>**KREISHMARLEY SANTIAGO SAGASTIVELSA**<br>APELADA(S) | **KLCE202201376** | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN**<br><br>Caso Núm.<br>**K VA2022-0162**<br>**K VA2022-0163 (1104)**<br><br>Sobre:<br>Art. 3.2 Ley 54<br>Art. 6.06 Ley 168 |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez.

*Barresi Ramos*, juez ponente

# S E N T E N C I A

En San Juan, Puerto Rico, hoy día 5 de febrero de 2024.

Comparece ante nos **El Pueblo de Puerto Rico** mediante *Solicitud de Certiorari* incoada el 15 de diciembre de 2022. En su recurso, **El Pueblo de Puerto Rico** nos solicita que revisemos la *Resolución y Orden Vista Preliminar en Alzada, Regla 24 de Procedimiento Criminal* emitida el 25 de octubre de 2022 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] Mediante dicho dictamen, el foro *a quo* dispuso: "[n]o existe causa probable por razón de insanidad mental". Así pues, concluyó que no existía causa para procesar a la señora **Kreishmarley Santiago Sagastivelsa** (señora **Santiago Sagastivelsa**).

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

---

[1] Esta determinación judicial fue notificada y archivada en autos el 26 de octubre de 2022. Véase Apéndice de la *Solicitud de Certiorari*, págs. 97- 98.

**- I -**

Por hechos ocurridos el 24 de julio de 2021, en el Municipio de San Juan, Puerto Rico, **El Pueblo de Puerto Rico** (Ministerio Público) presentó denuncias contra la señora **Santiago Sagastivelsa** por violación al Artículo 3.2(B) sobre maltrato agravado de la Ley Núm. 54 de 1989, conocida como la *Ley para la Prevención e Intervención con la Violencia Doméstica*[2], y al Artículo 6.06[3] de la Ley Núm. 168 de 2019[4], conocida como la *Ley de Armas de Puerto Rico*.[5] Ello, debido a una agresión, en múltiples partes del cuerpo, al señor Kevin Alicea Flores, su expareja, con una botella de cristal.

Tras los trámites de rigor, el día 3 de diciembre de 2021, la señora **Santiago Sagastivelsa** presentó una *Moción Anunciando Defensa de Incapacidad Mental* en la cual alego que "al momento de los hechos… se encontraba en un estado mental que no le permitía adecuar su conducta al mandato de ley".[6] Además, anunció que para establecer dicha defensa utilizaría los servicios del doctor Víctor J. Lladó Díaz.[7]

---

[2] **Art. 3.2 (B) Maltrato Agravado**. (8 LPRA § 632.)
Se impondrá pena correspondiente a delito grave de tercer grado en su mitad inferior cuando en la persona del cónyuge, ex cónyuge o de la persona con quien se cohabita o se haya cohabitado, o con quien se sostiene o haya sostenido una relación consensual, o con quien se haya procreado un hijo o hija, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, se incurriere en maltrato según tipificado en esta Ley, mediando una o más de las circunstancias siguientes:
(b) cuando se infiriere grave daño corporal a la persona.

[3] **Artículo 6.06. — Portación y Uso de Armas Blancas**. (25 LPRA § 466e).
Toda persona que sin motivo justificado use contra otra persona, o la muestre, o use en la comisión de un delito o su tentativa, manoplas, blackjacks, cachiporras, estrellas de ninja, cuchillo, puñal, daga, espada, honda, bastón de estoque, arpón, faca, estilete, punzón, martillos, bates, cuartón, escudo, hojas de navajas de afeitar de seguridad, garrotes, agujas hipodérmicas, jeringuillas con agujas o cualquier instrumento similar que se considere como un arma blanca, incurrirá en delito grave y convicta que fuere, será sancionada con pena de reclusión por un término fijo de tres (3) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de seis (6) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de seis (6) meses y un (1) día. Las penas que aquí se establecen serán sin derecho a sentencia suspendida, o a disfrutar de los beneficios de algún programa de desvío, o a cualquier alternativa a la reclusión, reconocidas en esta jurisdicción.
Queda excluida de la aplicación de este Artículo, toda persona que posea, porte o conduzca cualquiera de las armas aquí dispuestas en ocasión de su uso como instrumentos propios de un arte, deporte, profesión, ocupación, oficio o por condición de salud, incapacidad o indefensión.

[4] 25 LPRA § 466c.

[5] Véase Apéndice de la *Solicitud de Certiorari*, págs. 1- 4.

[6] *Íd.*, pág. 5.

[7] Véase *Escrito en Cumplimiento de Orden y Oposición a Petición de Certiorari*, págs. 6–44.

Después, el 3 de marzo de 2022, se celebró la Vista Preliminar. En dicha audiencia, el foro de instancia determinó: "[n]o existe causa probable en los casos de epígrafe. Imputada y testigo[s] citados en corte abierta para Vista Preliminar en Alzada el 29 de marzo de 2022 a las 10:00 a.m., piso 10".[8] Ese mismo día, se pronunció *Resolución y Orden* en la cual, en conformidad con la Regla 241 de las de Procedimiento Criminal, se requirió una evaluación de la capacidad mental y la medida de seguridad.[9] Así las cosas, se le impuso a la señora **Santiago Sagastivelsa** comparecer el 6 de abril de 2022 a la evaluación con el doctor William J. Lugo Sánchez; y se pautó audiencia para el 8 de abril de 2022 en la Sala 1105 del Centro Judicial de San Juan.

El 21 de marzo de 2022, **El Pueblo de Puerto Rico** presentó una *Moción de Reconsideración y en Solicitud de Resolución.*[10] En síntesis, argumentó que la defensa de la señora **Santiago Sagastivelsa** no logró rebatir la presunción de cordura. En su defecto, **El Pueblo de Puerto Rico** pudo establecer la probabilidad de capacidad de la imputada. Días después, el 11 de abril de 2022, la defensa de la señora **Santiago Sagastivelsa** presentó *Réplica a Moción de Reconsideración.*[11] En resumen, planteó que el presente caso es un ejemplo real de la problemática social que lacera constantemente los derechos civiles básicos de pacientes de salud mental. Además, manifestó que, en lugar de criminalizar y castigar por medio de penas, ya es tiempo de comenzar a atender los conflictos de violencia doméstica mediante la rehabilitación.

Así pues, el 19 de abril de 2022, el tribunal primario dispuso: "no ha lugar a la reconsideración del Ministerio Público. El procedimiento continuara al amparo de la Regla 24C de Procedimiento Criminal".[12]

Posteriormente, el 22 de agosto de 2022, se inició la vista preliminar en alzada. En dicha audiencia, testificó el señor Kevin Alicea Flores y el

---

[8] Véase *Apéndice de la Solicitud de Certiorari*, págs. 6- 10.
[9] *Íd.*, págs. 11- 13.
[10] *Íd.*, págs. 14- 27.
[11] *Íd.*, págs. 28- 35.
[12] *Íd*, págs. 36- 37.

agente Richard Chong. La vista preliminar continuó los días 25 de agosto de 2022 y 25 de octubre de 2022.

El 25 de agosto de 2022, declaró el doctor Víctor J. Lladó Díaz quien en su informe concluyó lo siguiente:

> Los eventos de este caso se dan en el contexto de una dinámica de violencia doméstica entre la imputada y el perjudicado, padre de su hijo. Ya previo a los hechos, hay historial de cierta tensión persistente entre ambos, y Kreishmarley se encontraba en un estado de intoxicación alcohólica, luego de haber estado ingiriendo cervezas excesivamente, y como cuestión de realidad, ésta portaba en sus manos en ese momento, una botella de cerveza… la evaluada venía padeciendo de una depresión crónica persistente, como parte de un trastorno bipolar I, para la cual no estaba recibiendo tratamiento psiquiátrico como en el pasado se le había brindado… al momento de los hechos la evaluada no tendría suficiente capacidad mental para aquilatar cabalmente la naturaleza, la criminalidad, el alcance y las implicaciones de sus actos.[13]

El mismo día, atestiguo la doctora Eunice Alvarado Díaz.[14] En su informe, señaló:

> Antes de comenzar un proceso de evaluación se recibe un referido, que incluye qué se estará evaluando y la pregunta (o preguntas) psicolegal a responder. Esto se conoce como motivo de referido. En el informe revisado no se evidencia explicación sobre la razón de referido o justificación para no ser incluida… [d]el informe no se especifica duración de la entrevista realizada o como se distribuyó el tiempo para llegar a las conclusiones presentadas. El presente caso es reconocido como complejo, por lo que se requiere de tiempo considerable para explorar las áreas pertinentes y llegar a una conclusión objetiva…en el presente caso se requería realizar un análisis que evaluara si los síntomas presentados al momento de los alegados hechos eran suficientes para que la imputada no pudiera entender su conducta y las consecuencias de la misma…del informe revisado se hace referencia a que la evaluada no recuerda bien los detalles, como parte de la conclusión afirma: " según explicado por la evaluada, se desata en ella una conducta agresiva y descontrolada…".[15]

En esta última fecha, luego de escuchada la prueba, el tribunal recurrido decretó la *Resolución y Orden Vista Preliminar en Alzada, Regla 24 de Procedimiento Criminal* impugnada. El mismo día, se intimó *Resolución y Orden Regla 241 de Procedimiento Criminal* pautando evaluación para el 18 de noviembre de 2022.[16]

El 9 de noviembre de 2022, **El Pueblo de Puerto Rico** presentó una *Moción de Reconsideración y en Solicitud de Resolución*, mediante la cual,

---

[13] Véase *Escrito en Cumplimiento de Orden y Oposición a Petición de Certiorari*, págs., págs. 64– 65.
[14] *Íd.*, págs. 45– 61.
[15] *Íd.*, págs. 70– 71, 79.
[16] Véase Apéndice de la *Solicitud de Certiorari*, págs. 99- 100.

en resumen, expresó:

> [L]a prueba de la incapacidad no es clara y los testimonios periciales son contradictorios, por lo que este Honorable Tribunal no tenía que, ni debía adjudicar los méritos de la defensa de insanidad mental para que el asunto se dilucide más ampliamente en una vista en su fondo en la etapa de juicio.[17]

El 14 de noviembre de 2022, el foro primario declaró no ha lugar dicho petitorio.[18] Por consiguiente, el 18 de noviembre de 2022, se celebró la audiencia y se pautó una evaluación para el mes de abril de 2023. En la misma, declaró el doctor William Lugo Sánchez quien hizo constar que: (1) evaluó a la señora **Santiago Sagastivelsa**; (2) el licenciado Russi Dilán le hizo llegar el informe pericial que se utilizó para declararla inimputable; y (3) recomendó que unas medidas de seguridad ambulatoria serían meritorias para observar como la señora **Santiago Sagastivelsa** puede continuar evolucionando. A su vez, el licenciado Russi Dilán informó que la señora **Santiago Sagastivelsa** recibe tratamiento en INSPIRA en el Municipio de Caguas.[19]

Inconforme, el 15 de diciembre de 2022, **El Pueblo de Puerto Rico** acudió ante este Tribunal de Apelaciones, y señaló el(los) siguiente(s) error(es):

> El Tribunal de Primera Instancia erró al concluir que no existía causa probable para acusar por razón de insanidad mental de la señora Santiago Sagastivelsa, a pesar de que esta no probó que, al momento de los hechos, carecía de capacidad suficiente para comprender la criminalidad del acto o para conducirse de acuerdo con el mandato de ley, como lo requiere el Artículo 40 del Código Penal, *supra*.

El 19 de diciembre de 2022, pronunciamos *Resolución* en la cual concedimos un plazo perentorio de diez (10) días para mostrar causa por la cual no debíamos expedir el auto de *certiorari* y revocar el dictamen impugnado a la señora **Santiago Sagastivelsa**.

El 3 de enero de 2023, la señora **Santiago Sagastivelsa** presentó su *Escrito en Cumplimiento de Orden y Oposición a Petición de Certiorari.* Mediante el referido documento, criticó que **El Pueblo de Puerto Rico** en lugar de buscar alternativas rehabilitadoras para quien padece un problema

---

[17] *Íd.*, págs. 101- 114.
[18] Véase Apéndice de la *Solicitud de Certiorari*, págs. 115- 116.
[19] *Íd.*, págs. 117- 118.

mental severo, optó por agravar su situación mental requiriéndole su comparecencia injustificada a los rigores de un juicio plenario. Además, indicó que no le hizo preguntas al perito psiquiatra del Estado con relación al tratamiento que había estado recibiendo la señora **Santiago Sagastivelsa**. Igualmente, añadió que **El Pueblo de Puerto Rico** presentó su caso en dos (2) ocasiones ante jueces distintas y que, inclusive incluyó prueba adicional en la Vista Preliminar en Alzada – y, aun así, no logró una determinación de causa probable para acusar contra la señora **Santiago Sagastivelsa**.

El 8 de marzo de 2023, este foro revisor emitió *Resolución* concediendo un término perentorio de treinta (30) días para reproducir la transcripción, exposición estipulada o exposición narrativa de la prueba testifical vertida ante el foro *a quo* a **El Pueblo de Puerto Rico**. Posteriormente, el 15 de mayo de 2023, la señora **Santiago Sagastivelsa** presentó *Moción Informativa* mediante la cual reiteró su anuencia respecto al documento presentado el 4 de mayo de 2023 por **El Pueblo de Puerto Rico** a los fines de que se considerase como la *transcripción estipulada de prueba oral*. Ante ello, el 16 de mayo de 2023, intimamos *Resolución* acogiendo la transcripción de prueba oral.

El 5 de junio de 2023, este foro intermedio requirió a la Secretaría del Tribunal de Apelaciones gestionar con la Secretaría del Tribunal de Primera Instancia, Sala Superior de San Juan, elevar los autos originales de los casos: KVP2021-1835, KVP2021-1836; KVA2022-0162 Y KVA2022-0163. Días después, el 15 de junio de 2023, **El Pueblo de Puerto Rico** presentó su *Alegato Suplementario*. Argumentó que el foro de instancia determinó que el Estado no cumplió con la carga probatoria requerida en la vista preliminar en alzada. Indicó que tal determinación se basó exclusivamente en la presunta condición mental de la señora **Santiago Sagastivelsa**. Fundamentó, además, que el doctor Víctor J. Lladó Díaz no logró explicar cómo llegó a la conclusión sobre el estado mental al momento de los hechos. Insistió, que existe ausencia de evidencia sobre

el estado mental al momento de los hechos, y, por lo tanto, el tribunal primario no debía conceder la defensa. También, aseguró que la prueba de la incapacidad no es tan clara y los testimonios periciales son contradictorios.

El 26 de junio de 2023, este foro apelativo emitió *Resolución* concediéndole, hasta el 30 de junio de 2023, para presentar su alegato de réplica a la señora **Santiago Sagastivelsa**. En consonancia, el 7 de julio de 2023, la señora **Santiago Sagastivelsa** presentó su *Alegato Suplementario de la Defensa*. En esencia, señaló que el Ministerio fiscal ha recurrido sobre el mismo asunto en dos (2) ocasiones distintas ante dos (2) juezas diferentes y en ambas ocasiones las magistrados determinaron que la señora **Santiago Sagastivelsa** era incapaz de entender la criminalidad del acto a consecuencia de un episodio maniaco provocado por una condición mental psiquiátrica previamente diagnosticada, y para la cual llevaba tiempo sin tomar sus medicamentos. Finalmente, culminó su escrito solicitando la confirmación de la decisión recurrida para que, de esa manera, la señora **Santiago Sagastivelsa** pueda continuar con su tratamiento psiquiátrico especializado.

Toda vez que los errores señalados van enfocados a cuestionar la suficiencia de la evidencia o prueba desfilada, a continuación, incluimos un resumen de los testimonios brindados ante el foro primario y que hemos examinado con sumo cuidado.

**Agente Leady Martínez Cortés**

El agente Martínez Cortés declaró que lleva veintiocho (28) años en la Policía de Puerto Rico, de los cuales completó veintidós (22) años específicamente en la división de Servicios Técnicos de San Juan. Indicó, además, que sus funciones como agente de la división consisten en trabajar las escenas de crímenes, incluyendo escalamientos, agresiones y robos. Asimismo, expresó que se encarga de tomar fotos y levantar huellas en las escenas.

El agente Martínez Cortés confirmó que el día, 25 de julio de 2021,

se encontraba en su oficina cuando recibió una llamada del agente Richard Chong Castillo para que fuese a tomarle fotos y documentar las heridas que presentaba una persona. La señora **Santiago Sagastivelsa** no tuvo objeción, por lo que, las fotografías fueron estipuladas y marcadas como exhibits.[20]

### Sr. Kevin Alicea Flores

El señor Alicea Flores comenzó su testimonio identificando a la señora **Santiago Sagastivelsa** y así el tribunal lo hizo constar para récord. El señor Alicea Flores aseguró que, el 24 de julio de 2021, en horas de la tarde, se encontraba en su barbería brindándole servicio a sus clientes, cuando la señora **Santiago Sagastivelsa** llegó al local y le preguntó si se podía quedar con el hijo de ambos. Él respondió que no podía porque existía un caso de custodia en proceso y no era su interés perjudicar el tracto. Narró, además, que después de recortar a su hijo, fue a llevarlo caminando hasta la casa de una vecina donde se encontraba la señora **Santiago Sagastivelsa**. Luego de entregar al menor, éste regresó a la barbería y después apareció nuevamente la señora **Santiago Sagastivelsa** preguntándole si se podía quedar con el menor a lo que este contestó que no. Manifestó que la señora **Santiago Sagastivelsa** se alteró y comenzó a faltarle el respeto a su persona y a los que se encontraban en la barbería. Además, afirmó que mientras discutían, la señora **Santiago Segastivelsa** lo agredió en la cintura, cara, cabeza, orejas y brazos con la mitad de una botella de cristal, por lo que, tuvo heridas profundas que ocasionaron de doce (12) a quince (15) puntos de sutura.[21]

### Agente Richard Chong Castillo

El agente Chong Castillo atestiguó que trabaja para la Policía Municipal de San Juan, en el Cuartel Municipal de Condado, y fue el agente investigador del caso. El agente Chong Castillo mencionó que recibió una llamada en la cual le informaron sobre los hechos en Barrio Obrero.

---

[20] Transcripción de la Prueba Oral (22 de agosto de 2022), págs. 7- 11.
[21] Transcripción de la Prueba Oral (22 de agosto de 2022), págs. 13– 22.

Asimismo, manifestó que la llamada que recibió fue entre las cuatro y media a cinco de la tarde. Además, aseguró que estuvo en el lugar y posteriormente se trasladó al hospital para entrevistar al señor Alicea Flores. Añadió que logró comunicarse con la señora **Santiago Sagastivelsa** y le indicó que pasara por el cuartel para entrevistarla sobre lo sucedido. Al comienzo de su dialogo con la señora **Santiago Sagastivelsa**, el agente Chong Castillo procedió a leer las advertencias. Luego de la señora **Santiago Sagastivelsa** entender y firmar las advertencias, aceptó los hechos, por lo que fue arrestada. El agente Chong Castillo expresó que, durante todo ese proceso, la señora **Santiago Sagastivelsa** se encontraba tranquila.[22]

### Doctor Víctor José Lladó Díaz

El doctor Lladó Díaz expresó que fue contratado por la Sociedad para Asistencia Legal para realizar una evaluación psiquiátrica pericial con respeto a la inimputabilidad de la señora **Santiago Sagastivelsa**. También, indicó que al entrevistar a la señora **Santiago Sagastivelsa**, encontró que tenía un historial de enfermedad psiquiátrica de tipo bipolar. Además, aseguró que la Bipolaridad Tipo I, es una enfermedad seria con potencial severo de discapacidad. Añadió, que durante la entrevista -la cual se realizó por videoconferencia y no se especificó tiempo de duración- la señora **Santiago Sagastivelsa** se expresaba y explicaba con detalles su vida y a que se dedicaba. No obstante, estableció que debido a su enfermedad mental de trastorno bipolar activa y al no tratarse adecuadamente, provocó -al momento de los hechos- impulsos que no pudo controlar. Aseguró que, a su juicio, se encontraba -en ese momento de los hechos- en un episodio maniaco de su condición que se agravó por los efectos del alcohol. Por tanto, manifestó que al momento de la acción y debido a volatibilidad que caracteriza el trastorno bipolar, es inimputable.[23]

### Doctora Eunice Alvarado Díaz

---

[22] Transcripción de la Prueba Oral (22 de agosto de 2022), págs. 47– 64.
[23] Transcripción de la Prueba Oral (25 de agosto de 2022), págs. 5– 69.

La doctora Alvarado Díaz testificó que tuvo ante sí y evaluó el informe realizado por el doctor Lladó Díaz. Aludió que evaluó todas las variables necesarias a la luz de las mejores prácticas del área forense, a la luz de lo que establece la literatura sobre el tema en particular e identificó hallazgos.[24] Específicamente, estableció que dividió su informe en fortalezas y debilidades. En su evaluación, aseguró encontrar dos (2) fortalezas, a saber: (1) la entrevista realizada; y (2) la revisión de los expedientes médicos. Por otro lado, identificó algunas debilidades como: (1) se hizo una sola entrevista; (2) no hubo entrevistas colaterales; (3) no surge evidencia en el informe de *malingering* (evaluación para descartar fingimiento de síntomas), como recomienda la literatura; y (4) tampoco hubo referido que estableciera sobre que preguntas se iba a estar evaluando a la señora **Santiago Sagastivelsa**.[25] Aseguró que para evaluar el estado mental de una persona y determinar que se encontraba carente de capacidad para comprender sus acciones al momento de los hechos requiere obtener información suficiente que no necesariamente se obtiene en una sola entrevista, pues es un caso complejo.[26]

Evaluado concienzudamente el expediente del caso, contando con el beneficio de la comparecencia de ambas partes y habiendo examinado minuciosamente la transcripción de la prueba oral estipulada, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

**- II -**

**A.** *Certiorari*

El recurso de *certiorari* permite a un tribunal de mayor jerarquía revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial.[27] Por ello, la

---

[24] Transcripción de la Prueba Oral (25 de agosto de 2022), págs. 14– 17.
[25] Transcripción de la Prueba Oral (25 de agosto de 2022), págs. 5– 27.
[26] Transcripción de la Prueba Oral (25 de agosto de 2022), pág. 20.
[27] *Rivera Gómez v. Arcos Dorados Puerto Rico Inc.*, 2023 TSPR 65; 212 DPR ___ (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).

determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[28]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[29] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[30]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[31] La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[32] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;
> (3) en casos de anotaciones de rebeldía;
> (4) en casos de relaciones de familia;
> (5) en casos revestidos de interés público; o
> (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[33]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos

---

[28] *Íd.*
[29] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).
[30] *Íd.*
[31] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez*, *supra*. El caso *Pueblo v. Román Feliciano*, 181 DPR 679, 693 (2011), concluye que "una oportuna moción de reconsideración de una resolución u orden interlocutoria durante un proceso penal interrumpe el referido término de treinta días para acudir mediante certiorari ante el Tribunal de Apelaciones. Así, el término comenzará cuando se notifique la resolución que resuelva la solicitud de reconsideración".
[32] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).
[33] *IG Builders et al. v. BBVAPR,* 185 DPR 307, 339– 340 (2012).

requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[34]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[35] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
> (D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[36]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[37] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[38] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*.[39] La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[40]

---

[34] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez*, *supra*; *McNeil Healthcare v. Mun. Las Piedras I*, *supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).

[35] *McNeil Healthcare v. Mun. Las Piedras I*, *supra*, pág. 404; *800 Ponce de León v. AIG*, *supra*.

[36] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez*, *supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).

[37] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).

[38] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).

[39] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).

[40] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction, Inc.*, *supra*.

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[41] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[42]

### B. Formas culpabilidad

El Artículo 21 del Código Penal de Puerto Rico dispone lo relativo a las formas de culpabilidad y el requisito general del elemento subjetivo.[43] El mencionado estatuto prescribe lo siguiente:

> (a) Una persona solamente puede ser sancionada penalmente si actuó a propósito, con conocimiento, temeraria o negligentemente con relación a un resultado o circunstancia prohibida por ley;

> (b) El elemento subjetivo del delito se manifiesta por las circunstancias relacionadas con el hecho, la capacidad mental, las manifestaciones y conducta de la persona.

De esa manera, por imperativos de esta definición de la parte subjetiva del delito, para poder castigar a una persona por la comisión de un delito se requiere que el acto se realice a propósito, con conocimiento, temeridad o negligencia.[44] Un individuo actúa **a propósito** cuando su objetivo consciente sea la producción del resultado prohibido por ley o cuando la persona cree que la circunstancia prohibida por ley existe.[45] Se actúa **con conocimiento** cuando la existencia de la circunstancia o la producción del resultado prohibido por ley es una prácticamente segura.[46] Mientras que un ser humano actúa **temerariamente** cuando está consciente que su conducta crea el riesgo injustificado de producir el resultado o la circunstancia prohibido por ley.[47]

### C. Causas de Inimputabilidad

---

[41] *García v. Asociación*, 165 DPR 311, 322 (2005).
[42] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[43] 33 LPRA § 5034 (a).
[44] 33 LPRA § 5034.
[45] 33 LPRA §. 5035. (énfasis suplido).
[46] *Íd.* (énfasis suplido).
[47] *Íd.* (énfasis suplido).

En el ámbito penal, la incapacidad mental de un imputado es importante en dos (2) etapas del procesamiento criminal, al momento de la comisión de los hechos alegados; y al momento y durante el proceso penal. La primera de esas etapas es la causa de *inimputabilidad*, y la segunda es la causa de *improcesabilidad*.[48]

El Artículo 38 Código Penal de Puerto Rico decreta expresamente que nadie será sancionado por un hecho que constituya delito si al momento de su comisión era inimputable. [49] La *imputabilidad* se define como la aptitud de un individuo para responder del hecho propio, la cual requiere como elemento esencial que éste posea ciertas condiciones de salud que integren su equilibrio psíquico.[50] Es decir, un ser humano que carezca del aludido equilibrio psíquico se considera entonces inimputable.

En nuestro ordenamiento jurídico se reconocen las siguientes causas de *inimputabilidad*: (1) minoridad; (2) incapacidad mental; y (3) trastorno mental transitorio.[51] Por ser pertinentes al caso ante nuestra consideración, discutiremos las últimas dos (2).

El Artículo 40 del Código Penal de Puerto Rico instituye la *inimputabilidad* por razón de incapacidad mental:

> No es imputable quien, al momento del hecho, a causa de enfermedad o defecto mental, carece de capacidad suficiente para comprender la criminalidad del acto o para conducirse de acuerdo con el mandato de ley.
>
> Los términos enfermedad o defecto mental no incluyen una anormalidad manifestada sólo por reiterada conducta criminal o antisocial.
>
> Para efectos de la prueba de incapacidad mental, el imputado deberá evidenciar la alegada incapacidad.[52]

El artículo está enmarcado en una formula psiquiátrica - psicológica jurídica que se refiere a la insuficiencia en las facultades mentales o perturbación en las mismas, **que impide a la persona comprender la**

---

[48] *Pueblo v. Santiago Torres*, 154 DPR 291, 299 (2001).
[49] 33 LPRA § 5061.
[50] M. Morales Lebrón, *Diccionario Jurídico según la Jurisprudencia del Tribunal Supremo de Puerto Rico,* Vol. IIA, University of Cincinnati College of Law, 1994, pág. 453; *Pueblo v. Cotto García*, 205 DPR 237, 251 (2020).
[51] 33 LPRA § 5061.
[52] 33 LPRA § 5063.

**criminalidad del acto o dirigir voluntariamente sus acciones**.[53] Dicha fórmula concibe dos (2) aspectos: el *cognoscitivo* y el *volitivo*.[54] El *cognoscitivo* tiene que ver con la incapacidad de la persona para reconocer el carácter ilícito de su acción u omisión, y comprender la criminalidad de su acto.[55] El *volitivo* se refiere a la incapacidad del individuo para conducirse conforme al mandato de ley.[56] En esencia, **la *inimputabilidad* por incapacidad mental es una defensa que pretende eximir de responsabilidad criminal toda vez que, ante la ausencia de tal capacidad, no cabe hablar de responsabilidad penal del imputado**.[57]

El ordenamiento jurídico ha reconocido que para levantar la defensa de *inimputabilidad* por razón de incapacidad mental, la carencia de capacidad no tiene que ser total, **pero es necesario demostrar que la persona no cuenta con capacidad suficiente para comprender la criminalidad de sus actos o de conformar esto al mandato de ley**.[58] Incluso, se ha resuelto que la retardación mental de por sí sola, no hace inimputable a un acusado, puesto que, aun quien sufre dicha condición habrá de responder penalmente si comprende la criminalidad de sus actos al momento de cometer los hechos.[59]

Por otro lado, el Artículo 41 del Código Penal de Puerto Rico reconoce la *inimputabilidad* por razón del trastorno mental:

> No es imputable quien al momento del hecho se halle en estado de trastorno mental transitorio, que le impida tener capacidad suficiente para comprender la criminalidad del acto o para conducirse de acuerdo con el mandato de ley.
>
> El trastorno mental transitorio no exime de responsabilidad penal cuando ha sido provocado por el sujeto con el propósito de realizar el hecho.[60]

Lo que distingue la *inimputabilidad* por razón de incapacidad mental, de la que es causada por razón de un trastorno mental transitorio es que

---

[53] *Pueblo v. Cotto García*, *supra*, págs. 251– 252. Véase, además: D. Nevares-Muñiz, *Derecho Penal Puertorriqueño*: parte general, 7ma ed., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2015, pág. 284. (énfasis nuestro).
[54] *Pueblo v. Cotto García*, *supra*, pág. 252.
[55] *Íd.*
[56] *Íd.*
[57] *Pueblo v. Santiago Torres, supra*, pág. 299. (énfasis nuestro).
[58] *Pueblo v. Marcano Pérez*, 116 DPR 917, 927 (1986). (énfasis nuestro).
[59] *Pueblo v. Ríos Maldonado*, 132 DPR 146, 165 (1992).
[60] 33 LPRA § 5064.

esta última se trata de una condición transitoria que puede terminar y desaparecer sin dejar huella. Dicha condición transitoria puede ser causada por una situación o motivo circunstancial externo al sujeto, o por una condición fisiológica que no conlleva [necesariamente] una enfermedad mental (ej. epilepsia, embriaguez patológica).[61]

Respecto al alcance de la *inimputabilidad* causada por un trastorno mental transitorio la profesora Dora Nevares Muñiz expone que:

> Independientemente del nombre que usemos para clasificar la condición fisiológica, patológica psicológica, que sufra la persona al momento de incurrir en conducta delictiva, lo importante es que estará exenta de responsabilidad penal si al momento de actuar lo hizo en un estado mental transitorio -no causado a propósito- caracterizado por una ruptura entre su yo psíquico y el mundo exterior.

> Si el trastorno mental transitorio fue provocado por el sujeto por imprudencia, responderá por negligencia si esta se sanciona expresamente por ley. Si fue provocado intencionalmente, entonces la responsabilidad es plena.[62]

Similarmente, el profesor Luis E. Chiesa Aponte plantea que **el trastorno mental transitorio exime de responsabilidad cuando elimina la capacidad del sujeto de comprender la criminalidad del acto o cuando niega la capacidad del actor para conducir su conducta conforme a su voluntad**.[63]

El profesor Chiesa Aponte explica, además, que esta defensa puede ser invocada para relevar de responsabilidad a quien, entre otras circunstancias, **sufre un arrebato grave producto de furor, odio, celos o miedo y a quien comete el delito durante un episodio de intoxicación aguda involuntaria.** Esta última se refiere a circunstancias en las que el individuo **no** tiene la culpa de haberse intoxicado.[64] Al respecto, nos aclara que cuando la intoxicación es consecuencia de la persona haber ingerido algún medicamento, se considera involuntaria si ocurre de manera imprevisible y si el autor no tenía razón para pensar que el medicamento puede ser intoxicante. Empero, si el acusado ingiere una cantidad mayor

---

[61] D. Nevares Muñiz, *Código Penal de Puerto Rico actualizado y comentado*, 4ta. ed. revisada y actualizada, Instituto para el Desarrollo del Derecho, Inc., 2019, pág. 85.
[62] *Íd.*, pág. 86.
[63] Véase: L. E. Chiesa Aponte, *Derecho Penal Sustantivo*, 2da Parte, Publicaciones JTS, pág. 261. (énfasis nuestro).
[64] *Íd.*, pág. 259.

de medicina que la recomendada por el médico, su intoxicación puede no considerarse involuntaria.[65]

En conformidad con lo antes expuesto, el texto del Artículo 42 del Código Penal de Puerto Rico instaura expresamente que **la voluntaria intoxicación por drogas, sustancias narcóticas, estimulantes o deprimentes, o sustancias similares, no es admisible para establecer que la persona imputada se encontraba en un estado de inimputabilidad**.[66]

También, es menester precisar que en nuestro ordenamiento **se presume la cordura del imputado**, por lo que, de no rebatirse dicha presunción, el Ministerio Público no tiene que introducir prueba sobre la capacidad mental de éste.[67]

Ahora bien, el último párrafo del Artículo 40 del Código Penal de Puerto Rico concierta expresamente que el acusado es quien tiene el peso de probar que se encontraba en un estado de incapacidad mental excluyente de responsabilidad penal.[68] Acorde con la profesora Nevares Muñiz, lo anterior implica que el peso de la prueba para rebatir la presunción de cordura la tiene el acusado, no el fiscal.[69]

Desde luego, una vez surge la duda sobre la cordura del acusado, le corresponde al Ministerio Público probar la sanidad mental del acusado más allá de cualquier duda razonable como cualquier otro elemento del delito.[70] El Ministerio Público no está obligado a presentar prueba pericial para probar la cordura del acusado o para refutar la prueba pericial de la defensa sobre insanidad mental. **Le basta con presentar prueba, sea o no pericial, o una combinación de ambas, que demuestre más allá de duda razonable tal cordura**.[71] Además, la defensa de insanidad mental se puede presentar en el acto de la vista preliminar.[72]

---

[65] *Íd.*, pág. 260.
[66] 33 LPRA § 5065.
[67] Véase *Pueblo v. Ríos Maldonado*, *supra*, pág. 168. (énfasis nuestro).
[68] 33 LPRA § 5063.
[69] Nevares Muñiz, *supra*, pág. 84.
[70] *Pueblo v. Ríos Maldonado*, *supra*; *Pueblo v. Marcano Pérez*, *supra*.
[71] *Íd.*
[72] *Pueblo v. Cotto García*, *supra*, págs. 254– 255; *Pueblo v. Lebrón Lebrón*, 116 DPR 855 (1986).

En suma, en los casos en que la persona sometida a juicio resulta no culpable por razón de incapacidad mental, se determinará la procedencia de imponer una medida de seguridad.[73]

### D. Vista Preliminar

La Regla 23 de las de Procedimiento Criminal atiende el mecanismo de la vista preliminar.[74] Reiteradamente nuestro Máximo Foro ha dictaminado que constituye un procedimiento judicial, más no es un mini juicio.[75] La naturaleza de esta vista es estatutaria, no constitucional.[76] Toda persona imputada de un delito grave tiene derecho a que se celebre una vista preliminar. Su objetivo consiste en que el Ministerio Público presente prueba que permita al tribunal hacer una determinación de que existe causa probable en cuanto a dos (2) aspectos: (1) el delito grave se cometió; y (2) la persona imputada lo cometió.[77] Si en la vista preliminar, el magistrado o la magistrada determina que no hay causa probable para acusar por un delito grave, el Ministerio Público está impedido de instar la acusación.[78]

En lo pertinente, cuando el Ministerio Público no obtenga un resultado favorable en la vista preliminar, este puede solicitar la celebración de una vista preliminar en alzada conforme a la Regla 24(c) de las de Procedimiento Criminal. A tenor con esta Regla, el Ministerio Público que no esté satisfecho con la determinación a la que llegue el magistrado que presidió la vista preliminar original, sea porque determinó ausencia total de causa probable para acusar al imputado o porque determinó causa probable por un delito menor al contenido en la denuncia, podrá someter el asunto nuevamente ante otro magistrado de jerarquía superior dentro del Tribunal de Primera Instancia, presentando la misma prueba que ofreció en la vista preliminar o presentando prueba distinta. En esta segunda vista, el magistrado podrá también determinar que existe causa probable por el

---

[73] *Pueblo v. Cotto García*, *supra*.
[74] 34 LPRA Ap. II.
[75] *Pueblo v. Ortiz, Rodríguez*, 149 DPR 363, 375 (1999).
[76] *Pueblo v. Martínez Hernández*, 208 DPR 872 (2022).
[77] *Pueblo v. Guadalupe Rivera*, 206 DPR 616, 623-624 (2021).
[78] *Íd*. Véase, además, Regla 24(c) de las de Procedimiento Criminal, 34 LPRA Ap. II; *Pueblo v. Jiménez Cruz*, 145 DPR 803, 815 (1998).

delito imputado en la denuncia, causa probable por algún delito menor incluido en el imputado o inexistencia de causa probable.[79]

Ahora bien, la determinación emitida tras la *Vista Preliminar en Alzada*, ya sea la inexistencia de causa por insuficiencia de la prueba o la existencia de causa probable por un delito distinto o inferior al imputado, es final y no es revisable ante un foro de mayor jerarquía.[80] Solo se puede revisar por *certiorari, y a modo de excepción*, cuando la determinación de no causa probable para acusar se funda en cuestiones estrictamente de derecho, desvinculadas de la apreciación de la prueba que fue presentada para demostrar la comisión del delito.[81]

### E. Regla 240 de las de Procedimiento Criminal

Cuando se plantea la incapacidad para enfrentar un proceso criminal, es necesario que el tribunal tenga una **base razonable** para creer que el acusado no es procesable.[82] En ese sentido, tal base razonable para creer que una persona se encuentra incapacitada mentalmente, al amparo de la Regla 240 de las de Procedimiento Criminal, conlleva que el juez de instancia se asegure que el individuo que está enfrentando el procedimiento se encuentra mentalmente incapacitado. Esto es, se encuentra inhabilitado para concebir y aportar a su defensa durante el proceso criminal.[83]

Empero, es menester aclarar que, distinto a la incapacidad mental a la cual se refiere la defensa de *inimputabilidad*, la incapacidad mental que considera la aludida Regla 240 es la que puede advenir en cualquier momento después de presentada la acusación o denuncia.[84]

De esa manera, si la defensa logra demostrar mediante **preponderancia de prueba** una **duda sustancial** sobre la capacidad del

---

[79] *Pueblo v. Ríos Alonso*, 149 DPR 761, 769 (1999).
[80] *Pueblo v. Encarnación Reyes*, 191 DPR 176, 182 (2014); *Pueblo v. Ríos Alonso*, 149 DPR 761 (1999); *Pueblo v. Rodríguez Ríos*, 136 DPR 685 (1994).
[81] *Pueblo v. Encarnación Reyes*, supra; *Pueblo en interés menor K.J.S.R.*, 172 DPR 490 (2007); *Pueblo v. Rivera Alicea*, 150 DPR 495, 499–500 (2000); *Pueblo v. Cruz Justiniano*, 116 DPR 28 (1984).
[82] D. Nevares Muñiz, *Sumario de Derecho Procesal Penal Puertorriqueño*, 10ma edición (2014), pág. 169.
[83] *Pueblo v. Pagán Medina*, 178 DPR 228 (2010).
[84] *Íd.*, en la pág. 240.

acusado deberá referirse para evaluación por los peritos del Estado y señalar una vista. Una vez evaluado mentalmente, el juez determinará si la persona es procesable o no.[85] Del mismo modo, en la vista de procesabilidad se escuchará el testimonio de los peritos designados por el tribunal y el de cualquier otro que las partes presenten.[86] Ahora bien, una vez el tribunal nombra un perito, no podrá descansar en el testimonio de un lego para emitir un dictamen.[87] De hecho, una evaluación psiquiátrica, tarjetas de citas y hospitalizaciones en la clínica psiquiátrica y/o resultados de exámenes que demuestren un cociente intelectual mermado, proponen una base razonable para creer que un imputado está mentalmente incapacitado para entender la naturaleza del proceso penal adversativo y, por tanto, procederá una vista de procesabilidad.[88]

Entre los indicadores que pueden insinuar que un imputado no es procesable se encuentran los siguientes: **(1) demuestre un comportamiento errático durante el proceso; (2) al momento de alegarse su improcesabilidad se traiga ante la consideración del juez evidencia de un historial de comportamiento severamente irracional; y (3) se presente evidencia de que el imputado se encuentra bajo influencia de drogas o sufriendo del "síndrome de retirada"**.[89]

Resulta forzoso distinguir que la incapacidad mental para ser sometido al procedimiento criminal puede sobrevenir en cualquier momento. Además, **una persona puede no estar procesable al momento del juicio por razón de incapacidad mental y sí estar mentalmente capacitado al momento de los hechos**.[90] Incluso, el Ministerio Público no está impedido si, por ser diligente en la investigación de su caso, refiere al arrestado a un examen psiquiátrico por entender que el mismo no se comporta como una persona mentalmente capacitada.[91]

---

[85] *Pueblo v. Arroyo Rodríguez*, 208 DPR 394 (2021); *Camareno Maldonado v. Trib. Superior*, 101 DPR 552 (1973).
[86] Nevares Muñiz, *supra*, pág. 169.
[87] *Pueblo v. Rodríguez Galarza*, 117 DPR 455 (1986).
[88] *Pueblo v. Pagán Medina*, *supra*, pág. 230.
[89] *Pueblo v. Pagán Medina*, *supra*, pág. 241. (énfasis nuestro).
[90] Nevares Muñiz, *supra*, pág. 170. (énfasis nuestro).
[91] *Pueblo v. Castillo Torres*, 107 DPR 551 (1978).

### F. Opiniones Periciales

Cuando conocimiento científico, técnico o especializado sea de ayuda para la juzgadora o el juzgador poder entender la prueba o determinar un hecho en controversia, una persona testigo capacitada como perita – conforme a la Regla 703 de Evidencia– podrá testificar en forma de opinión o de otra manera.[92]

El valor probatorio del testimonio dependerá, entre otros, de:

(a) si el testimonio está basado en hechos o información suficiente;
(b) si el testimonio es el producto de principios y métodos confiables;
(c) si la persona testigo aplicó los principios y métodos de manera confiable a los hechos del caso;
(d) si el principio subyacente al testimonio ha sido aceptado generalmente en la comunidad científica;
(e) las calificaciones o credenciales de la persona testigo; y
(f) la parcialidad de la persona testigo.

Nuestro Alta Curia ha definido la figura jurídica del perito como "una persona que, a través de la educación o experiencia, ha demostrado un conocimiento o destreza sobre una materia de manera que puede formar una opinión que sirva de ayuda al juzgador". La admisibilidad del testimonio pericial será determinada por el Tribunal de conformidad con los factores enumerados en la Regla 403 de Evidencia.[93] Así también, la mencionada Regla 704, implanta el amplio panorama de datos percibidos que pueden servir como fundamento para sustentar el testimonio pericial.[94] Concorde a esta Regla, un testigo perito podrá fundamentar sus opiniones en los hechos o datos que haya percibido, en los que estén dentro de su conocimiento personal o en los que haya conocido durante el juicio o vista. "Si se trata de materia de naturaleza tal que las personas expertas en ese campo razonablemente descansan en ella para formar opiniones o hacer inferencias sobre el asunto en cuestión, los hechos o datos no tienen que ser admisibles en evidencia."[95]

Concorde a la norma general de admisibilidad de evidencia

---

[92] 32 LPRA Ap. VI R. 703.
[93] 32 LPRA Ap. VI R. 403.
[94] 32 LPRA Ap. VI R. 704.
[95] E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, Ediciones Situm, (2016)., págs. 244– 245.

pertinente recogida en las Reglas 401 y 402 de Evidencia, el tribunal solamente debe excluir prueba pericial si considera que su valor probatorio está sustancialmente superado por las consideraciones expuestas en la Regla 403 de Evidencia, a saber: (1) perjuicio indebido; (2) confusión o desorientación; (3) dilación de los procedimientos; o (4) prueba repetitiva e innecesaria.[96] De presentarse una objeción sobre la admisibilidad de la prueba pericial, "[…] el tribunal deberá hacer una determinación al amparo de la Regla 403".[97]

En conformidad con el texto de la Regla 702 de Evidencia, el tribunal tiene la discreción para permitir o eliminar el testimonio a la luz de los riesgos indeseados que contempla la Regla 403 del cuerpo normativo en discusión. No es suficiente que pese más el elemento negativo que el valor probatorio, sino que, para excluir evidencia pertinente, el tribunal debe determinar que el valor probatorio de la evidencia quedó sustancialmente superado por la presencia de cualquiera de los elementos a los que se alude en la Regla. Dicho estándar protege el principio fundamental precisado en la Regla 402 de Evidencia, de admitir toda evidencia pertinente en ausencia de Regla de exclusión aplicable.[98] En torno a la discreción conferida a los tribunales, el profesor Emmanuelli Jiménez expresa:

> Bajo la jurisprudencia previa a la nueva Regla 702, los tribunales mantenían amplia discreción para aceptar o rechazar la prueba pericial. Sin embargo, opino que ya no es un asunto de mera discreción judicial, sino que el tribunal tiene que analizar y ponderar los factores de valor probatorio de la Regla 702 y combinarlos con la 403 para poder justificar válidamente una determinación de descartar un testimonio pericial.[99]

De lo anterior se desprende que la discreción del foro de instancia al emitir juicio sobre la admisibilidad y valor probatorio de un testimonio pericial no es irrestricta, toda vez que tal ejercicio de adjudicación está regido por las guías de las vigentes Reglas de Evidencia de 2009. Lo

---

[96] 32 LPRA Ap. VI R. 401, 402 y 403.
[97] Chiesa Aponte, *supra*, págs. 74 – 78.
[98] *Íd.*
[99] R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño, Nuevas Reglas de Evidencia 2010*, pág. 415.

contrario constituiría abuso de discreción.[100]

De otra parte, los foros apelativos también nos regimos por los criterios que dispone la Regla 403 de Evidencia, a la hora de examinar la admisibilidad y el valor probatorio de los testimonios expertos.[101] Tal juicio será necesario para establecer si erró el foro primario al admitir, excluir o apreciar la prueba pericial.

**- III -**

Como cuestión umbral, por ser un asunto de derecho, *a modo de excepción*, en una determinación de no causa en una *Vista Preliminar en Alzada*, podemos intervenir como ocurre en este caso.

En este recurso, **El Pueblo de Puerto Rico** señala que erró el foro de instancia al concluir que no existía causa probable para acusar por razón de insanidad mental de la señora **Santiago Sagastivelsa**. Sustenta su petición alegando que no se logró probar que, al momento de los hechos, la señora **Santiago Sagastivelsa** carecía de capacidad suficiente para comprender la criminalidad del acto. Para ello, el 25 de octubre de 2022, durante la *Vista Preliminar en Alzada*, presentó como testigo pericial a la doctora Álvarez Díaz, quien evaluó el informe pericial presentado por la defensa de la señora **Santiago Sagastivelsa** por conducto del doctor Lladó Díaz. Específicamente, la doctora Álvarez Díaz resaltó ciertos hallazgos los cuales dividió en fortalezas y debilidades. Entre las fortalezas, predominó que el doctor Lladó Díaz realizó una entrevista a la señora **Santiago Sagastivelsa** y revisó sus antecedentes médicos. Sin embargo, subrayó siete (7) debilidades del informe, entre los cuales se encuentran que se realizó una sola entrevista por videoconferencia; la literatura científica establece que la entrevista debe ser profunda y de varias horas; y es necesario explicar la razón de la evaluación para establecer una relación

---

[100] R. Emmanuelli Jiménez, *La Nueva Regla 702, un Cambio Fundamental en la Presentación de Prueba Pericial*, 44 Rev. Jur. U. Inter. P.R. 341, 348 (2010).

[101] La Regla 403 de Evidencia estatuye que la evidencia pertinente podrá ser excluida cuando su valor probatorio sea superado por los siguientes factores: (1) riesgo de causar perjuicio indebido; (2) riesgo de causar confusión; (3) riesgo de causar desorientación al jurado; (4) dilación indebida en los procedimientos; y, (5) presentación innecesaria de prueba acumulativa. 32 LPRA Ap. V R. 403.

con la paciente y recoger su historial de salud. También, indicó que ante casos complejos en los cuales se está evaluando la capacidad de una persona al momento de cometer un delito, es importante realizar entrevistas colaterales para determinar reacción o conducta del individuo ante otras personas que lo conocen. Además, argumentó que el área de estado mental se encuentra incompleta, por lo que, no se precisa o fundamenta como el doctor Lladó Díaz llegó a su conclusión sobre el estado mental de la señora **Santiago Sagastivelsa**.[102]

Ante ello, **El Pueblo de Puerto Rico** argumentó que la evaluación del doctor Lladó Díaz no solo fue lacónica, sino también incompleta, por lo que, evidentemente falta evidencia de cómo se evaluaron distintas áreas de la entrevista a la señora **Santiago Sagastivelsa**. Por tanto, no se puede concluir que la señora **Santiago Sagastivelsa** se encontraba incapacitada mentalmente al momento de los hechos.

De otro lado, la defensa de la señora **Santiago Sagastivelsa** planteó que **El Pueblo de Puerto Rico** ha insistido a toda costa someter a los rigores de un juicio en su fondo a una persona con un diagnóstico de enfermedad mental en lugar de permitirle recibir el tratamiento psiquiátrico que tanto requiere. Asimismo, la defensa señaló que, durante la *Vista Preliminar,* **El Pueblo de Puerto Rico** intentó cuestionar el informe pericial preparado por el doctor Lladó Díaz. Además, testificaron los testigos: señor Kevin Alicea Torres (perjudicado), el agente investigador Richard Chong Castillo, doctor Lladó Díaz y la doctora Alvarado Díaz. A pesar de ello, el foro primario procedió a determinar *No Causa* para acusar por razón de insanidad mental al momento de los hechos. Argumentó, además, que se logró establecer la defensa afirmativa de insanidad mental al derrotar la presunción de cordura.

Finalmente, la señora **Santiago Sagastivelsa** manifestó que el 18 de noviembre de 2022, se celebró una audiencia sobre la imposición de medidas de seguridad. En la misma, el doctor William Lugo Sánchez,

---

[102] Véase Apéndice de la *Solicitud de Certiorari*, págs. 81– 95.

Psiquiatra del Estado, declaró que: "tras hacer la correspondiente evaluación recomendaba la implementación de medidas de seguridad ambulatorias para que la [señora **Santiago Sagastivelsa]** pudiese continuar bajo tratamiento psiquiátrico ambulatorio en el programa INSPIRA de Caguas". Así pues, la defensa de la señora **Santiago Sagastivelsa** expuso que **El Pueblo de Puerto Rico** ha presentado su caso ante dos (2) magistradas distintas e inclusive incluyó prueba adicional en la *Vista Preliminar en Alzada* y, aun así, no logró una determinación de causa probable para acusar contra la señora **Santiago Sagastivelsa**.

Al evaluar la totalidad del expediente del presente caso, resulta necesario puntualizar que cuando un imputado plantea la defensa de incapacidad mental o de trastorno mental transitorio deberá suministrar al Ministerio Público la siguiente información: (1) nombre de los testigos con los que se propone establecer la defensa de incapacidad mental o trastorno mental transitorio; (2) la dirección de dichos testigos; (3) los documentos a ser utilizados para sostener la defensa, supliendo copia de los mismos, y de no poseerlos, informar en poder de quien se encuentran tales documentos, autorizando a que los mismos sean fotocopiados; (4) hospital u hospitales en que estuvo recibiendo tratamiento y las fechas en que lo recibió; y (5) médicos o facultativos que hubiesen tratado o atendido al imputado en relación a su incapacidad mental o condición de trastorno mental transitorio.[103] A su vez, el Ministerio Público tendrá la obligación recíproca de informar al imputado el nombre y dirección de los testigos y los documentos que se propone utilizar para refutar la defensa de trastorno mental transitorio o incapacidad mental.[104]

En el caso ante nuestra consideración, tanto la defensa de la señora **Santiago Sagastivelsa** como **El Pueblo de Puerto Rico** cumplieron con intercambiarse recíprocamente la información necesaria salvaguardando así el adecuado balance que garantiza las exigencias del debido proceso

---

[103] 34 LPRA Ap. II, R. 74; *Pueblo v. Cotto García*, *supra*, pág. 253.
[104] *Íd.*

de ley y del juicio justo.

En el caso de marras, el 3 de diciembre de 2021, la señora **Santiago Sagastivelsa** presentó moción para anunciar la defensa de incapacidad mental. Para ello, contrataron los servicios del doctor Lladó Díaz. Este, luego de realizarle una entrevista por videoconferencia el 26 de octubre de 2021, concluyó: "[p]or lo tanto, en mi opinión pericial, la señora [**Santiago Sagastivelsa]** no es imputable de los delitos que se le acusan, ya que, por los fundamentos antes explicados, cumplía con los criterios eximentes del Artículo 40 de nuestro [C]ódigo [Penal] vigente, sobre incapacidad mental por razón de una enfermedad psiquiátrica severa".[105]

De otro lado, **El Pueblo de Puerto Rico** presentó a la doctora Alvarado Díaz quien evaluó el informe pericial del doctor Lladó Díaz. En síntesis, la doctora Alvarado Díaz concluyó: "[d]el informe no se específica duración de la entrevista realizada o como se distribuyó el tiempo para llegar a las conclusiones presentadas. El presente caso es reconocido como uno complejo, por lo que se requiere de tiempo considerable para explorar las áreas pertinentes y llegar a una conclusión objetiva".[106]

Nuestro Máximo Foro ha expresado que el Artículo 40 del Código Penal está "enmarcado bajo la fórmula psiquiátrica – psicológica – jurídica que se refiere a la insuficiencia en las facultades mentales o perturbación, que le impide a una persona comprender la criminalidad del acto o dirigir voluntariamente sus acciones".[107] Sobre ello, el profesor Chiesa Aponte comentó lo siguiente:[108]

> Cuando se expresa que el acusado es "inimputable" por incapacidad mental, lo que quiere decirse es que no tiene sentido (ni resultaría justo) imputarle el acto antijurídico como un hecho suyo, pues al momento de cometer el delito, el sujeto no tenía capacidad para controlar sus acciones o para entender la criminalidad de su proceder.
>
> Así pues, el criterio de *inimputabilidad* no exige una carencia total de

capacidad mental, sino que basta con que dicha carencia sea de índole

---

[105] Véase Apéndice de la *Solicitud de Certiorari*, pág. 78.
[106] *Íd.*, pág. 86.
[107] *Pueblo v. Cotto García*, *supra*, pág. 251.
[108] E.L. Chiesa Aponte, *Derecho Penal Sustantivo*, 2da ed., San Juan, 2013, pág. 256. Citado en *Pueblo v. Cotto García*, *supra*, pág. 252.

suficiente o sustancial.[109] Asimismo, nuestro foro máximo ha resuelto incluso que la falta de prueba documental que evidencie un historial de insanidad mental, previo al hecho imputado, no provoca que se descarte la posibilidad de levantar la insanidad mental.[110]

Como mencionáramos, nuestro ordenamiento jurídico presume la cordura de un imputado, por lo que, de no rebatirse dicha presunción, el Ministerio Público no tiene que introducir prueba sobre la capacidad mental de este.[111] Ahora bien, la embriaguez o la voluntaria intoxicación por drogas, sustancias narcóticas, estimulantes o deprimentes, o sustancias similares no exime de responsabilidad criminal.[112] Asimismo, cuando surge la duda sobre la cordura del acusado, le corresponde al Ministerio Público probar la sanidad mental del acusado más allá de cualquier duda razonable como cualquier otro elemento del delito.[113]

Surge de nuestro legajo, dos (2) informes periciales que nos arrojan datos que son de suma importancia para determinar si al momento de los hechos, la señora **Santiago Sagastivelsa** tenía o no conocimiento de sus acciones. Ciertamente, no cabe duda qué la señora **Santiago Sagastivelsa** padece de trastorno bipolar. Asimismo, tiene un historial de tratamiento psiquiátrico de salud mental y desde el 2019, la señora **Santiago Sagastivelsa** no estaba tomándose los medicamentos psiquiátricos que le habían recetado en el Centro Health Pro Med. Adicionalmente, tiene un historial de abuso severo de alcohol.[114] Su perito, doctor Lladó Díaz, resumió en su informe sobre estado físico y emocional de la señora **Santiago Sagastivelsa** que no existe evidencia de síntomas psicóticos, tales como trastornos del pensamiento o de la sensopercepción.[115]

El 25 de agosto de 2022, a preguntas de **El Pueblo de Puerto Rico**,

---

[109] *Pueblo v. Marcano Pérez*, *supra*, págs. 926 – 927.
[110] *Pueblo v. Cotto García*, *supra*, pág. 263.
[111] *Pueblo v. Ríos Maldonado*, *supra*, pág. 168.
[112] *Pueblo v. Robles González*, 132 DPR 554, 562 (1993).
[113] *Pueblo v. Ríos Maldonado*, *supra*.
[114] Véase Apéndice de la *Solicitud de Certiorari*, págs. 76- 77.
[115] *Íd.*, pág. 77.

el doctor Lladó Díaz mencionó: "para el momento de los hechos hacía algún tiempo que no se estaba tratando y no estaba tomando medicamentos".[116] También, manifestó que, en el momento de la entrevista, la señora **Santiago Sagastivelsa** se encontraba responsiva, directa, espontánea y coherente. Aseguró, además, que: "[d]escribió, pues, desde su perspectiva los eventos del caso, lo sucedido con… con lujo de detalles. (…) ella agrede a este caballero severamente le ocasiona daños con golpes y una botella rota que tenía cerveza, había estado tomando cerveza durante ese día previo a los hechos".[117]

En el contrainterrogatorio, **El Pueblo de Puerto Rico** le pregunta sobre detalles concretos de su informe pericial, el doctor Lladó Díaz respondió: "[que la imputada] no pudo recordar otras cosas".[118] Esas otras cosas que la señora **Santiago Sagastivelsa** no pudo recordar iban dirigidas a establecer si al momento de los hechos poseía o no capacidad para comprender la naturaleza de sus acciones. De hecho, el Honorable Juez expresó: "[e]l tribunal escuchó la declaración del testigo y no es compatible una cosa con la otra".[119] El doctor Lladó Díaz, además señaló a preguntas de **El Pueblo de Puerto Rico** que no era necesario realizar entrevistas a otras personas colaterales para evaluar el comportamiento habitual de la señora **Santiago Sagastivelsa** previo a los hechos.[120] Minutos después, **El Pueblo de Puerto Rico** le preguntó si durante su entrevista indagó sobre su comportamiento y estado mental días previos al incidente a lo que respondió: "yo no recuerdo que eso se preguntara".[121]

De la entrevista realizada por el doctor Lladó Díaz no se comprueban indicadores sobre un comportamiento errado durante el proceso; al contrario, en múltiples ocasiones se enfatizó que la señora **Santiago Sagastivelsa** se encontraba tranquila, responsiva y pudo contestar de forma lógica y coherente las preguntas. Inclusive, fue tan responsiva que

---

[116] Transcripción de la Prueba Oral (25 de agosto de 2022), pág. 9.
[117] Transcripción de la Prueba Oral (25 de agosto de 2022), pág. 9.
[118] *Íd.*, pág. 37.
[119] *Íd.*, pág. 39.
[120] *Íd.*, pág. 10.
[121] *Íd.*, pág. 59.

se entendió que no era necesario hacer preguntas a colaterales porque sus respuestas eran suficientes.[122]

Ante ello, no se desprende evidencia y/o prueba que nos muestre un comportamiento severamente irracional. Sino que desde el 2018, tiene un diagnóstico de la condición mental (bipolaridad) y a partir de 2019, voluntariamente abandonó el tratamiento al dejar de ingerir sus medicamentos.[123] Incluso,– **al momento de los hechos** – se encontraba bajo los efectos del alcohol y había estado consumiendo alcohol con frecuencia al punto que se catalogó como historial de abuso severo de alcohol. En cuanto a este punto, sabido es que la intoxicación voluntaria de alcohol no es un eximente de responsabilidad penal, pero sí se puede presentar para determinar el fin, motivo o intención con que cometió el delito.[124]

Existen múltiples elementos fácticos y circunstancias, que tienden a establecer que un imputado en un caso penal no está procesable. Entre estos elementos se encuentra: cambios en el comportamiento; inhabilidad para reconocer personas conocidas o familiares; comportamiento raro o extraño; comportamiento violento; daño cerebral evidenciado por pruebas neurológicas; historial previo de problemas psiquiátricos; historial de uso de alcohol y drogas; presencia de pensamientos delirantes; alucinaciones; bloqueos mentales o confusión; intentos suicidas; entre otros.[125]

Ciertamente, el trastorno bipolar es una condición que afecta el autocontrol y crea un aspecto volitivo, es decir, produce incapacidad para resistirse a una conducta prohibida como lo puede ser una agresión. No obstante, un diagnóstico clínico de un trastorno mental no basta para

---

[122] *Íd.*, págs. 37– 40.
[123] El *Informe Psiquiátrico Pericial* puntualiza que en 2019 a la señora **Santiago Sagastivelsa** le recetaron los medicamentos Depakote ER 250 mg dos (2) veces al día, y Risperdal 1 mg al acostarse. Véase Apéndice de la *Solicitud de Certiorari*, págs. 75– 78. El Depakote es un estabilizador del afecto que usualmente es recetado para pacientes con trastorno bipolar. Sus dosis van entre 125 mg a 250 mg. De otro lado, el Risperdal es un anti – psicótico y sus dosis van entre 1 mg a 6 mg. Véase, además, J.B. Casillas Rodríguez, *Manual Práctico: Defensas que Establecen la Incapacidad Mental del Imputado: La Incapacidad Mental y sus Zonas Intermedias*, 6ta edición, junio 2023, págs. 148– 149.
[124] *Pueblo v. Robles*, *supra*, pág. 562; 33 LPRA sec. 5065.
[125] Casillas Rodríguez, págs. 291– 292. Véase, además: *American Jurisprudence, 40 Proof of Facts* 2d, págs. 219 – 220.

establecer -**capacidad al momento de los hechos** – y, por tanto, determinar si un individuo cumple con un criterio legal específico como lo sería eximir de responsabilidad penal.[126]

Es preciso apuntar, que acogemos el argumento de **El Pueblo de Puerto Rico** sobre el asunto de que el foro primario, en efecto, no determinó que el Estado incumplió con la carga probatoria requerida de conectar los elementos del delito con la persona imputada. Este asunto quedó pendiente ante la determinación del foro primario de que "[n]o existe causa probable por razón de insanidad mental". La controversia de estricto derecho planteada ante nos es si, afirmativamente, se ha logrado derrotar la presunción de cordura que le asiste a las personas.

A nuestro juicio, **no existe base razonable** para convencer a este tribunal intermedio de que -al momento de los hechos- la señora **Santiago Sagastivelsa** carecía de capacidad mental suficiente para controlar sus acciones o para entender la criminalidad de sus actos. Por tanto, **no** habiéndose probado la defensa de insanidad mental procede que el foro primario emita una determinación de conformidad a la prueba presentada por el Ministerio Público en la *Vista Preliminar en Alzada* respecto a si se presentó prueba suficiente para concluir que: (a) el delito se cometió y (b) que la persona imputada lo cometió. En consecuencia, colegimos que el tribunal incidió y el único señalamiento de error se cometió.

Ciertamente, estamos conscientes que nuestra sociedad enfrenta una crisis de salud mental. La escasez de especialistas, la ausencia de un nivel de cuidado intermedio y el aumento de personas en necesidad de servicios ha dificultado el acceso y agravado las condiciones de muchos puertorriqueños.[127] Asimismo, creemos en un sistema rehabilitador, tratamientos y medidas de seguridad que puedan proceder, pero también es necesario responsabilizarnos por nuestras acciones. Toda acción

---

[126] *Id.*, pág. 97.
[127] Véase Marga Parés Arroyo, *En Crisis la Salud Mental de Puerto Rico*, EL NUEVO DÍA, 5 de febrero de 2023. Recuperado de: https://www.elnuevodia.com/noticias/locales/notas/en-crisis-la-salud-mental-de-puerto-rico/.

positiva o negativa genera una consecuencia que en su día hay que afrontar.

**- IV -**

Por los fundamentos antes expuesto, *expedimos* el auto de *certiorari;* y **revocamos** la *Resolución y Orden Vista Preliminar en Alzada, Regla 24 de Procedimiento Criminal* pronunciada el 25 de octubre de 2022 por el Tribunal de Primera Instancia, Sala Superior de San Juan. Así las cosas, de manera urgente y en un término no mayor de cinco (5) días, el tribunal deberá citar a las partes y emitir su determinación sobre la *Vista Preliminar en Alzada* habiendo evaluado la prueba testifical y documental presentada en la audiencia celebrada el 25 de octubre de 2022 sin tomar en consideración la defensa de insanidad mental. Se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de San Juan, para que de forma inmediata continúe el procedimiento criminal salvaguardando el debido proceso de ley; se ordena la restitución de las condiciones de fianza impuestas en la determinación de causa probable, y se realicen todos los trámites necesarios para que se coloque el dispositivo de supervisión electrónica la señora **Santiago Sagastivelsa**.

**Notifíquese inmediatamente y adelántese por teléfono. Deberá notificarse a la señora Madeline González, Administradora de los Centros Regionales de Servicios del Programa de Servicios con Antelación al Juicio (PSAJ), a su correo electrónico: gonzalezm@dcr.pr.gov.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **EL PUEBLO DE PUERTO RICO**<br><br>Peticionario<br><br>v.<br><br>**KEISHMARLEY SANTIAGO SAGASTIVELSA**<br><br>Recurrido | KLCE202201376 | **CERTIORARI**<br>procedente del Tribunal de Primera Instancia, Sala de **San Juan**<br><br>Civil Núm.:<br>**K VA2022-0162**<br>**K VA2022-0163**<br><br>Sobre:<br>Art. 3.2 Ley 54<br>Art. 6.06 Ley 168 |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez.

### VOTO PARTICULAR DE LA JUEZA CINTRÓN CINTRÓN

En San Juan, Puerto Rico, a 5 de febrero de 2024.

Estoy conforme con la decisión de expedir el auto de *certiorari* y revocar el dictamen recurrido, pronunciado el 25 de octubre de 2022, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Con la referida determinación concluimos que -al momento de los hechos- la señora Santiago Sagastivelsa tuvo suficiente capacidad mental para controlar sus acciones o para entender la criminalidad de su proceder. En consecuencia, ordenamos la devolución del caso al foro de instancia para que, a base de la prueba desfilada en la vista preliminar en alzada, se haga la determinación correspondiente, conforme dispone la Regla 24(c) de Procedimiento Criminal, 34 LPRA Ap. II; R. 24(c). A pesar de lo anterior, resulta necesario plasmar unas expresiones.

En atención a las particularidades que presenta el caso ante nos, de índole criminal con matices de salud mental, presentado ante este Foro el 15 de diciembre de 2022, por El Pueblo de Puerto Rico, entiendo se debió resolver en los méritos con mayor celeridad.

Ello, con el propósito de salvaguardar la seguridad de la parte perjudicada, y, a su vez, mover ágilmente la maquinaria judicial, de la cual, propiamente, los ciudadanos de Puerto Rico exigen rapidez y diligencia en los procesos criminales.[128] Máxime, en un asunto bajo la *Ley para la Prevención e Intervención con la Violencia Doméstica* y la *Ley de Armas de Puerto Rico*. En fin, para esta servidora, justicia tardía no es justicia.

Sol de Borinquen Cintrón Cintrón
Jueza de Apelaciones

---

[128] Véase, Opinión disidente y concurrente emitida por el Juez Presidente señor Hernández Denton, a la cual se unió la Jueza Asociada señora Fiol Matta en *Pueblo v. García Colón*, 182 DPR 129, 190 (2011) y Opinión disidente y concurrente del Juez Presidente señor Hernández Denton en *In re Pagani Padró*, 181 DPR 517, 536 (2011).